*E-Filed 04/26/2010*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ULTRA PRODUCTS, INC., | No. C 09-04255 RS |
| Plaintiff, | **ORDER DENYING MOTION TO STAY** |
| v. | |
| ANTEC, INC., et al., | |
| Defendants. | |

I.     INTRODUCTION

Defendant Antec, Inc. and others (collectively, "Antec") move to stay all judicial proceedings pending the outcome of a possible *inter partes* reexamination of U.S. Patent No. 7,133,293 ("the '293 Patent"). In the alternative, Antec requests a temporary stay of discovery until the United States Patent and Trademark Office ("PTO") determines whether a substantial new question of patentability exists. Plaintiff Ultra Products, Inc. ("Ultra Products") vehemently objects, insists the motion to stay is premature as the PTO has not yet acted on the reexamination request, and convincingly argues a stay would impose unreasonable delay without adequate assurances of meaningful simplification. Ultra Products suggests Antec's request is a stalling tactic; delay, the company explains, will levy a tactical disadvantage insofar as meaningful discovery will be more

difficult as time passes and the alleged infringement may continue in the interim. Where, as here, a stay would impose potentially unreasonable delay and prejudice but does not with any certainty benefit or streamline the litigation, it would be improvidently granted. The matter is appropriate for resolution without oral argument pursuant to Civil Local Rule 7-1(b) and the hearing scheduled for April 28, 2010 is **vacated**. Antec's motion is denied.

## II.   PROCEDURAL HISTORY AND RELEVANT FACTS

### A.   Procedural History

Ultra Products originally filed its Complaint in federal court in the Middle District of Florida on April 4, 2008. Defendants moved for a change of venue to this district in August of that year. After months of discovery relating to the venue question, the Florida court transferred the matter to this Court in September of 2009. Ultra Products contends it experienced noticeable foot dragging on the part of defendants with regard to the disclosures and conferences required by Federal Rule of Civil Procedure 26. The company also explains defendants scheduled and then cancelled a settlement conference on two occasions. When Ultra Products sought compliance with Rule 26, it relates that defendants halted settlement discussions. Prior to reassignment to the undersigned, the parties attended a Case Management Conference in December of 2009. The Court issued a scheduling order tailored to the underlying patent issues that drive the case. Ultra Products recounts that, accordingly, it duly served infringement contentions and written discovery in January and the parties exchanged invalidity contentions, proposed claim terms for construction and other claim construction materials. It represents that both parties have begun document production, served and, in some cases responded to, interrogatories. The parties have scheduled depositions throughout the months of April, May and June of this year.

On March 3, 2010, Antec filed both its reexamination request with the PTO as well as this motion to stay. Apparently, the PTO rejected the request on March 16, 2010 pursuant to a "Notice of Failure to Comply with *Inter Partes* Reexamination Request Filing Requirements." After Antec re-filed the request, the PTO designated the actual filing date as March 29, 2010.

### B.   Relevant Facts

As Ultra Products explains, the '293 Patent refers to a "modular" computer power supply invention designed to reduce the "spaghetti-tangle," unsightly clutter and overheating effect that are characteristic of personal computer cords. Apparently, a modular system allows users the "flexibility of attaching to the power supply only those component cables" they actually need and use. (Pl.'s Opp'n at 4:4-5.) Ultra Products contends its inventors, Carl Fiorentino and Eddy Kuo, conceived the modular invention in May of 2003. In July of that year, according to Ultra Products, Fiorentino disclosed the invention to a business associate, Thomas Finizia. To determine whether Antec would have the ability to manufacture the modular product for Ultra Products, Finizia then relayed details of the product to an Antec employee, Kirby Carswell. Carswell then disclosed these details to Antec president Andrew Lee via e-mail and, according to Ultra Products, Antec secretly filed for patent protection of the very same invention in Taiwan and China. These patents were duly issued.

Ultra Products explains that Antec's allegedly infringing product (dubbed the "Neo-Power 480" product) appeared in the United States' market in July of 2004. Ultra Products filed its application for the '293 Patent on September 8, 2004. That December, plaintiff filed a "Petition to Make Special" with the PTO to accelerate prosecution of the '293 Patent. Then, in October of 2007, Ultra Products brought an action against Antec in the Beijing First Intermediate People's Court of the People's Republic of China for trade secret misappropriation. After a trial in March of 2009, the Beijing Court entered a judgment declaring Fiorentino and Kuo the true inventors of the Chinese patent and transferring ownership of Antec's patent to Ultra Products. Ultra Products argues that Antec asserted the very same Neo-Power 480 invention as the "prior art" in its March, 2010 reexamination request. Ultra Products also insists that defendants have had various opportunities to challenge the '293 Patent with the same prior art material since 2005. It highlights three specific occasions on which defendants or their counsel threatened to seek reexamination in light of the Neo-Power 480 materials but did not. By implication, plaintiff challenges defendants' insistence that the current reexamination request was timely and informed by recently discovered prior art. Antec maintains that key components of the prior art are indeed brand new.

### III. LEGAL STANDARD

The decision to stay a patent case in the midst of a PTO reexamination rests with a court's discretion. *Viskase Corp. v. Am. Nat'l Can Co.*, 261 F.3d 1316, 1328 (Fed. Cir. 2001). A court is certainly not required to stay judicial resolution in light of a pending patent reexamination. *Id.* A stay may be useful, however, where the outcome of the reexamination would assist the court in determining patent validity and, if the claims were canceled in the reexamination, would eliminate the need to try the infringement issue. *See, e.g.*, *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983) ("One purpose of the reexamination procedure is to eliminate trial of that issue (when the claim is canceled) or to facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding)."). In the reexamination context, district courts in this Circuit have relied on the following three factors to ascertain the appropriateness of a stay: (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set. *In re Cygnus Telecom. Tech., LLC Patent Litig.*, 385 F. Supp. 2d 1022, 1023 (N.D. Cal. 2005) (*citing Xerox Corp. v. 3Com Corp.*, 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999); *ASCII Corp. v. STD Entm't USA, Inc.*, 844 F. Supp. 1378, 1380 (N.D.Cal. 1994)). Taken together, these factors weigh against a stay.

### A. Undue Prejudice or Tactical Disadvantage

At the outset, Ultra Products impugns defendants' motion as a dilatory tactic designed to prolong the alleged infringing behavior. Two facts lend support at least to the notion that the stay would cause unwarranted delay. First, the PTO has not yet granted Antec's request for reexamination. Antec's motion, therefore, is arguably premature. *See* 35 U.S.C. § 318 (noting that a stay may be appropriate once an order for reexamination has been *issued*); *Heinz Kettler GMBH & Co. v. Indian Indus., Inc.*, 592 F. Supp. 2d 880, 882 (E.D. Va. 2009) (denying motion to stay where PTO had not yet granted request for reexamination). *But see Ralph Gonnocci Revocable Living Trust v. Three M Tool & Machine*, No. 02-74796, 2003 WL 22870902, at *4 (E.D. Mich. Oct. 7,

2003). Second, the timing of Antec's motion is also somewhat troubling. Antec argues it has "diligently" pursued reexamination and, by way of explanation for the fact that it only filed the reexamination request in March of this year, insists that the prior art was not cited or considered by the patent examiner. Antec represents that the key components of the prior art were discovered only recently. (Defs.' Reply at 9:25-27.) Ultra Products counters that the patent examiner *did* in fact consider Antec's Neo-Power 480 Chinese patent and, moreover, insists defendants threatened Ultra Products with reexamination based on the same or substantially similar prior art on numerous occasions since 2005.

Reexamination, plaintiffs complain, entails a lengthy process. *See In re Cygnus Telecomm. Tech.*, 385 F. Supp. 2d at 1023 (finding that reexaminations generally take from six months to three years); *Xerox Corp. v. 3Com Corp.*, 69 F. Supp. 2d 404, 406 n.1 (W.D.N.Y. 1999) (relying on statistics showing that the average pendency of reexamination before the PTO is 19.2 months, without including the appellate process). Defendants are correct to point out that delay by itself does not necessarily constitute undue prejudice, as nearly every judicial stay involves delay. *See, e.g.*, *Telemac Corp. v. Teledigital, Inc.*, 450 F. Supp. 2d 1107, 1111 (N.D. Cal. 2006) ("[T]he likely length of reexamination is not, in itself, evidence of undue prejudice . . . ."). Yet Antec's election not to seek reexamination at any point in the past several years, as Ultra Products suggests, raises the inference that the timing of the current request is tactically driven. *See Esco Corp. v. Berkeley Forge & Tool, Inc.*, 2009 WL 3078463, No. 09-1635, at *3 (N.D. Cal. Sept. 28, 2009) (prejudice existed beyond mere reexamination delay where defendants waited five months to file for reexamination and did so after halt in settlement negotiations); *Telemac*, 450 F. Supp. 2d at 1111 (denying motion to stay because reexamination delay placed plaintiff at tactical disadvantage). Ultra Product's fear that evidence, witness availability, and memory relating to the relevant 2003-04 timeframe will become more difficult to access as more time passes is well-founded. In short, an additional three to six year delay tacked onto litigation that is already two years old certainly places the plaintiff at a tactical disadvantage.

B. <u>Simplification of the Issues</u>

The second factor considers whether reexamination will significantly simplify or streamline the litigation. Naturally, defendants are optimistic. They note that if the reexamination results in the cancellation of claims, the underlying infringement suit will not be necessary. If the claims are affirmed, Antec points out that not only can the Court rely on the PTO's specialized expertise, but Antec will also be estopped from advancing repetitive arguments. Ultra Products counters that any suggestion that the patent claims will be cancelled is merely speculative. Moreover, they note that the preclusive effect of any reexamination decision would apply only to Antec, but not to any of its twelve co-defendants, notwithstanding an indication that those defendants will undertake to be bound by any such decision. These are valid points that Antec cannot refute. Especially where the PTO has not yet granted the reexamination request, Antec has not persuasively demonstrated that the results of reexamination will simplify the instant litigation such that a stay would be helpful.

C. Procedural Posture of the Instant Case

The procedural posture of the litigation weighs against a stay. The case is two years old, the parties (at least until many of these dates were vacated by this Court's reassignment order) are operating under a patent scheduling order. Discovery and claim construction preparation are well under way. The case is not, as defendants insist, in its infancy. A stay would potentially render the expense and time already expended a futile rehearsal, as the parties may ultimately have to begin the process anew following reexamination.[1]

IV. CONCLUSION

The decision to stay judicial proceedings in a patent case pending reexamination is discretionary. Often, a stay works as a logical and practical solution where the PTO effectively resolves much of the dispute that goes to the heart of patent litigation. For all the reasons explained above, this is not one of those cases. A stay would threaten yet more delay where, for that matter, it is not yet clear that the PTO will even grant the request for reexamination. The defendants' motion

---

[1] Defendants suggest that, in the alternative, the Court impose a temporary, three-month stay of discovery pending the PTO's decision on Antec's reexamination request. Because plaintiff has persuasively demonstrated that a stay would not be warranted even in the event the request is granted by the PTO, defendants' alternative proposal is also denied.

for a stay must therefore be denied.  A case management conference is scheduled for **May 27, 2010 at 10:00 a.m.** in Courtroom 3 on the 17th Floor of the United States Courthouse, 450 Golden Gate Avenue, San Francisco, California.

    IT IS SO ORDERED.

Dated: 04/26/2010

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California

No. C 09-4255 RS
ORDER DENYING MOTION TO STAY