PAGES 1 – 52

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE RICHARD SEEBORG

ULTRA PRODUCTS,                        )
                                       )
            PLAINTIFF,                 )
                                       )
 VS.                                   ) NO. C 09-4255 RS
                                       )
ANTEC, INC., ET AL.,                   )
                                       )  SAN FRANCISCO, CALIFORNIA
            DEFENDANT.                 )  WEDNESDAY
                                       )  AUGUST 11, 2010
_____)

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

**FOR PLAINTIFF**          GREENBERG TRAURIG, LLP
                           200 PARK AVENUE
                           FLORHAM PARK, NEW JERSEY  07932
                       **BY:  MICHAEL NICODEMA, ESQUIRE**
                           **BARRY SCHINDLER, ESQUIRE**


**FOR DEFENDANT**          MOUNT & STOELKER, P.C.
                           333 WEST SAN CARLOS STREET
                           SAN JOSE, CALIFORNIA  95110
                       **BY:  DANIEL S. MOUNT, ESQUIRE**
                           **KEVIN M. PASQUINELLI, ESQUIRE**
                           **JING CHERNG, ESQUIRE**


*REPORTED BY:  JOAN MARIE COLUMBINI, CSR #5435, RPR*
              *OFFICIAL COURT REPORTER, U.S. DISTRICT COURT*

1            <u>PROCEEDINGS; WEDNESDAY, AUGUST 11, 2010</u>

2

3            **THE CLERK:**  C 09-4255, ULTRA PRODUCTS, INC. VERSUS

4    ANTEC, INC. ET AL.

5            COUNSEL, PLEASE STATE YOUR APPEARANCES.

6            **MR. NICODEMA:**  GOOD AFTERNOON, YOUR HONOR.  MICHAEL

7    NICODEMA FOR THE PLAINTIFF ULTRA PRODUCTS.

8            **THE COURT:**  GOOD AFTERNOON.

9            **MR. MOUNT:**  GOOD AFTERNOON, YOUR HONOR.  DANIEL MOUNT

10   FOR DEFENDANTS, ALONG WITH KEVIN PASQUINELLI AND JING CHERNG.

11           **THE COURT:**  GOOD AFTERNOON.

12           ALL RIGHT.  WE ARE NOW AT THE CLAIM CONSTRUCTION

13   POINT OF THE PROCESS.  WHAT WE DISCUSSED AT THE TUTORIAL THIS

14   MORNING WAS THE WAY TO PROCEED, AND MY PREFERENCE WOULD BE TO GO

15   DISPUTED CLAIM TERM BY DISPUTED CLAIM TERM AND HAVE THE TWO

16   SIDES ENGAGE, RATHER THAN HAVE EACH SIDE GO THROUGH THEIR ENTIRE

17   SET OF POSITIONS.

18           SO WITH THAT, WHY DON'T WE START OUT, MR. NICODEMA,

19   WHAT'S THE FIRST, I BELIEVE THE FIRST TERM TO BE CONSTRUED IS --

20           **MR. NICODEMA:**  YES, YOUR HONOR.

21           THE FIRST TERM IS "PERSONAL COMPUTERS."

22           **THE COURT:**  THEN AS WE INDICATED BEFORE, THERE'S

23   ALSO -- THE TERM "PERSONAL COMPUTER POWER SUPPLY" IS A SEPARATE

24   TERM.

25           **MR. NICODEMA:**  IT'S THE VERY NEXT TERM, YOUR HONOR.

1 THAT WILL BE THE NEXT TERM.

2          AND IF I MAY JUST RUN THROUGH THESE, THE HAPPY NEWS

3 IS, YOUR HONOR, THERE'S ONLY REALLY SIX TERMS --

4          **THE COURT:** RIGHT.

5          **MR. NICODEMA:** -- TO CONSTRUE: PERSONAL COMPUTER,

6 PERSONAL COMPUTER POWER SUPPLY, DIRECTLY MATED, A PLURALITY OF

7 COMPONENT CABLES, SOCKET. BUT THERE ARE TWO OTHER CLAIM

8 ELEMENTS THAT USE THE WORD "SOCKET," AND WE'RE GOING TO TAKE

9 THEMSELVES TOGETHER. ONE IS DC OUTPUT WITH SOCKET PLUG, AND

10 THERE'S TWO OTHER ELEMENTS THAT USE THE WORD "PLUG," AND WE ARE

11 GOING TO TAKE THEM TOGETHER: DC OUTPUT CABLE PLUG, DC OUTPUT

12 PLUG. AND THEN WE HAVE THE DC OUTPUT CABLE SOCKET AND DC OUTPUT

13 CABLE PLUG OR CABLE SOCKET. SO WHEN WE PUT ALL THOSE TOGETHER

14 WE ARE DOWN TO SIX.

15          **THE COURT:** OKAY.

16          LET'S PART WITH "PERSONAL COMPUTER." HERE'S

17          THE DIFFERENCE IN THE CONSTRUCTIONS. THERE'S NO

18          SURPRISE THERE. WE BOTH AGREE -- BOTH SIDES

19          AGREE THAT "PERSONAL COMPUTER" MEANS A COMPUTER

20          DESIGNED FOR AN INDIVIDUAL USER. ULTRA'S

21          CONSTRUCTION WOULD EXCLUDE SERVERS FROM THAT.

22          THE DEFENDANT'S CONSTRUCTION ADDS THE FOLLOWING

23          LANGUAGE: "BUT USABLE IN ANY APPLICATION,

24          INCLUDING PERSONAL COMPUTER SERVERS."

25          HERE'S THE SUPPORT FROM THE INTRINSIC RECORD, YOUR

1  HONOR, AND FROM COMMONLY USED DEFINITIONS THAT WE CITED IN OUR

2  BRIEF, AND FROM THE DEFENDANT'S OWN BRIEF FOR OUR CONSTRUCTION

3  OF "PERSONAL COMPUTERS."  IT'S CONSISTENT WITH THE ORDINARY

4  MEANING OF "PERSONAL COMPUTER."  WE PROVIDED A WEBOPEDIA ––

5  THAT'S A WELL-KNOWN COMPUTER DICTIONARY ONLINE.

6              DEFINITION OF "PERSONAL COMPUTER," WE PUT THAT IN OUR

7  BRIEF, IN OUR OPENING BRIEF:  A SMALL RELATIVELY INEXPENSIVE

8  COMPUTER DESIGNED FOR AN INDIVIDUAL USER.

9              OUR CONSTRUCTION IS ALSO CONSISTENT WITH THE

10 PREAMBLE, WHICH WAS ADDED BY THE PATENTEE TO DISTINGUISH OVER

11 PRIOR ART.  THE PREAMBLE DID NOT ALWAYS RECITE "PERSONAL

12 COMPUTER," BUT IT WAS AMENDED TO ADD "PERSONAL COMPUTER" TO

13 DISTINGUISH OVER PRIOR ART.

14             THE PREAMBLE COMPONENTS, WHICH BOTH SIDES AGREE ARE

15 CLAIM LIMITATIONS, INCLUDE THINGS SUCH AS GAMING CARDS, AND

16 GAMING CARDS ARE COMMONLY FOUND ONLY IN PERSONAL COMPUTERS.

17             AND I HAVE A TYPO HERE, YOUR HONOR, IN THIS NEXT

18 BULLET, AND I APOLOGIZE.  IT SHOULD READ:

19                 "THE INTRINSIC RECORD NEVER SUGGESTED

20                 ANYTHING BUT A PERSONAL COMPUTER CAN BE USED TO

21                 PRACTICE THE INVENTION."

22             THERE'S NOTHING IN THE PATENT OR IN THE FILE HISTORY

23 THAT SUGGESTS THAT SERVERS OR WORK STATIONS OR THINGS USEABLE AS

24 SERVERS OR WORK STATIONS CAN BE USED IN THE PRACTICE OF THE

25 INVENTION.  IT JUST SAID "PERSONAL COMPUTER."

1          AND THE PATENT NEVER REFERS TO THE TERM "SERVER" OR

2    "WORK STATION" IN CONNECTION WITH THE INVENTION.

3          ULTRA'S CONSTRUCTION OF "PERSONAL COMPUTER" IS ALSO

4    CONSISTENT WITH THE PROSECUTION HISTORY.

5          AND, YOUR HONOR, HERE'S SOMETHING WE LOOKED AT THIS

6    MORNING IN THE TUTORIAL, THE FIRST EXAMINER INTERVIEW:  ONE OF

7    THE THINGS THE APPLICANTS AND THEIR COUNSEL DID WAS GIVE THE

8    EXAMINER A BRIEF PRESENTATION OF THE STATE OF THE ART AND THE

9    BACKGROUND OF THE INVENTION THAT INCLUDED A HISTORY OF PERSONAL

10   COMPUTERS, THEIR CONSTRUCT AND USE OF STANDARDIZED COMPONENTS,

11   INCLUDING POWER SUPPLIES.  AND THAT'S WHAT I WAS TALKING ABOUT,

12   YOUR HONOR, THIS MORNING WHEN I PUT A PRIOR ART POWER SUPPLY, AN

13   ANTEC POWER SUPPLY AND AN ULTRA POWER SUPPLY IN THE SAME

14   COMPUTER SAYS AND SHOWED THEY WERE STANDARDIZED COMPONENTS.

15   THOSE ARE NOT FEATURES OF SERVER OR OF WORK STATIONS.

16          **THE COURT:**  COULD YOU ANGLE THE PROJECTOR TO THE

17   RIGHT A LITTLE BIT?  MY PROBLEM IS MY COMPUTER SCREEN IS KIND OF

18   BLOCKING MY VIEW.  IF IT COULD BE SO THE PICTURE SHOWS UP TO THE

19   RIGHT, TO MY RIGHT.

20          THAT'S BETTER.  A LITTLE BIT.  THE FURTHER RIGHT YOU

21   CAN GO, THAT'S BETTER.

22          **MR. NICODEMA:**  IS IT IS BETTER WE HAVE A LITTLE 3-D

23   GOING ON?

24          **THE COURT:**  YES.  THANK YOU.

25          **MR. NICODEMA:**  ANOTHER IMPORTANT POINT, YOUR HONOR, I

 1  WANTED TO MAKE FROM THE PROSECUTION HISTORY WAS THIS DECLARATION

 2  THAT WAS SUBMITTED BY MR. GEROW.  HE SUBMITTED A DECLARATION IN

 3  SUPPORT OF PATENTABILITY OF THE INVENTION.  AND HE TALKED ABOUT

 4  THE MODDER MARKET, WHICH IS TO WHAT THE INVENTION IS DIRECTED.

 5          ONE OF THE THINGS MR. GEROW SAID IN HIS DECLARATION,

 6  HE TALKED ABOUT THIS ACTIVE MARKET OF COMPUTER USERS WHO

 7  PURCHASE PERSONAL COMPUTER HARDWARE COMPONENTS, INCLUDING POWER

 8  SUPPLIES, IN ORDER TO CONSTRUCT CUSTOM PERSONAL COMPUTERS.  THIS

 9  IS NOT DONE WITH SERVERS.  THIS IS DONE WITH PERSONAL COMPUTERS

10  THAT ARE DESIGNED FOR INDIVIDUAL USERS.

11          NOW, IN THIS SLIDE WE PUT SOME INFORMATION TO SHOW --

12  MORE INFORMATION TO SHOW THAT PERSONAL COMPUTERS ARE NOT SERVERS

13  OR WORK STATIONS AS ARGUED BY THE DEFENDANTS.

14          YOUR HONOR WAS ASKING THIS MORNING WHETHER THE

15  PARTIES HAD SUBMITTED A DEFINITION OF "SERVER."  IN OUR BRIEF,

16  IN OUR OPENING BRIEF, WE SUBMITTED WIKIPEDIA (SIC) DEFINITIONS

17  OF "PERSONAL COMPUTER," WHICH I SHOWED IN THE PREVIOUS SLIDE:

18  "A SMALL, RELATIVELY INEXPENSIVE COMPUTER DESIGNED FOR

19  INDIVIDUAL USE."  AND ALSO A DEFINITION OF SERVER:

20          "A COMPUTER OR DEVICE ON A NETWORK THAT

21          MANAGES RESOURCES."

22          THEY HAVE DIFFERENT ORDINARY MEANINGS.

23          AND THE DEFENDANTS ALSO DEFINED WHAT A SERVER WAS IN

24  THEIR BRIEF.  SECOND BULLET POINT.  THEY SAID THAT SERVERS ARE

25  NOT PERSONAL COMPUTERS PER SE:

1           "BECAUSE SERVERS ARE DESIGNED FOR

2      MULTI-USER APPLICATIONS AND MANY TIMES INCLUDE

3      SPECIAL FEATURES IN SUPPORT OF THIS, INCLUDING

4      LARGER STORAGE, FASTER NETWORKING AND, OF

5      COURSE, RACK MOUNTING."

6           AND I WANT TO FOCUS ON THE WORDS "MANY TIMES" IN

7 CONNECTION WITH RACK MOUNTING.

8           IF THERE WAS SOME INDICATION THIS MORNING FROM THE

9 DEFENDANTS THAT SERVERS ARE ONLY RACK MOUNTED, THAT'S NOT THE

10 CASE.  THEIR OWN DEFINITION DOESN'T SAY THAT.  PLUS, THERE'S

11 NOTHING IN THE INTRINSIC RECORD OF THE PATENT TO INDICATE THAT

12 SERVERS WERE ONLY RACK MOUNTED.  AND, IN ANY EVENT, EVEN RACK

13 MOUNTED SERVERS WOULD BE INDIVIDUAL COMPUTERS.  SO YOU HAVE TO

14 LOOK AT THOSE AND SAY:  ARE THEY SERVERS, OR ARE THEY PC'S?

15 THEY'RE SERVERS.

16           **THE COURT:**  DURING THE TUTORIAL, THE DEFENSE WAS

17 SEVERAL TIMES SUGGESTING THAT THE FOCUS IN CONSIDERING THE

18 SERVER ISSUE IS TO -- IS ON FUNCTIONALITY, YOU KNOW, THEY -- CAN

19 A PERSONAL COMPUTER EFFECTIVELY, AS I UNDERSTOOD THEIR ARGUMENT,

20 CAN IT FUNCTION AS A SERVER OR NOT, AND THAT SHOULD BE ONE OF

21 THE ASPECTS THAT I FOCUS ON.  WHY IS THAT WRONG?

22           **MR. NICODEMA:**  THAT'S WRONG, BECAUSE, YOUR HONOR, YOU

23 HAVE TO LOOK AT WHAT THE PATENTEE SAID HIS INVENTION WAS.

24           THE PATENTEE FOCUSED ON THE STRUCTURE OF THE COMPUTER

25 AND NOT THAT IT MAY BE USED AS SOMETHING ELSE LATER, BECAUSE

1  LET'S LOOK AT THE DEFENDANT'S DEFINITION WHERE THEY SAY SERVERS

2  ARE NOT PERSONAL COMPUTERS BECAUSE OF THESE THINGS:  THEY ARE

3  DESIGNED FOR MULTI-USER APPLICATIONS AND MANY TIMES INCLUDE

4  SPECIAL FEATURES SUCH AS LARGER STORAGE, FASTER NETWORKING, ET

5  CETERA.

6           YOU ARE NOT TAKING A PERSONAL COMPUTER, PUTTING IT

7  HERE AND SAY:  LET'S USE IT FOR THE GAMING INDUSTRY; PUTTING IT

8  OVER THERE AND SAY:  LET'S USE THIS MACHINE AS A SERVER.  YOU'D

9  HAVE TO MODIFY IT.  YOU HAVE TO CHANGE IT.  ONCE YOU REBUILD IT,

10 IT'S NOT A PERSONAL COMPUTER ANYMORE, IT'S A SERVER.

11          THOSE MACHINES THEY HAVE OVER THERE, THE IBM, THE HP,

12 AND THE MAC, THEY HAVE -- AND THIS IS NOT EVEN IN THE RECORD.

13 I'M GOING A LITTLE BIT OFF THE RESERVATION HERE BECAUSE THIS

14 STUFF ISN'T EVEN IN THE INTRINSIC RECORD OF THE PATENT.

15          BUT THEY HAVE SPECIAL FEATURES THAT MAKE THEM

16 SERVERS, CONNECTING TO OTHER SERVER COMPUTERS.  THEY DON'T HAVE

17 GAMING CARDS.  THEY ARE NOT THE TYPE OF THINGS THAT ARE USED BY

18 INDIVIDUALS.  THEY ARE DESIGNED FOR MULTI-USERS.

19          THIS IS WHAT THE DEFENDANT'S OWN BRIEF SAID A SERVER

20 WAS:  IT WAS DESIGNED FOR MULTI-USERS AND HAS SPECIAL FEATURES

21 TO SUPPORT THAT USE.

22          AND THE DEFENDANT'S OWN PUBLICATIONS RECOGNIZE THE

23 MODDER MARKET, TO WHICH THE PC OF THE INVENTION ARE DIRECTED,

24 AND SERVER WORK STATION MARKETS AS DISTINCT MARKETS.

25          WE HAVE SOME LITTLE SCREEN SHOTS FROM THEIR

1   DOCUMENTS.  ON THE LEFT IS A TITAN 650 SERVER CASE THAT ANTEC

2   MAKES, DEFENDANT ANTEC.  AND IN THAT DOCUMENT DESCRIBING THE

3   PRODUCT, IT TALKS ABOUT THE SERVER AND WORK STATION MARKET.

4   OKAY?

5          ON THE RIGHT --

6          **THE COURT:**  IS THAT SOMETHING THAT I CAN TAKE INTO

7   ACCOUNT AT CLAIM CONSTRUCTION, WHAT THE MARKET REALITIES ARE IN

8   TERMS OF HOW -- I MEAN, CAN I -- IS THAT A LEGITIMATE THING TO

9   TAKE INTO CONSIDERATION?

10          **MR. NICODEMA:**  THE MARKET REALITIES?

11          **THE COURT:**  YEAH.

12          **MR. NICODEMA:**  YOU CAN TAKE THAT INTO ACCOUNT AS MUCH

13   AS YOU CAN TAKE INTO ACCOUNT ANYTHING THAT'S SITTING ON THAT

14   TABLE.

15          **THE COURT:**  YOU DON'T WANT ME TO TAKE THAT INTO

16   ACCOUNT EITHER.

17          BUT ISN'T THE PROCESS:  I'M TRYING TO GLEAN THE

18   MEANING OF THESE TERMS BY LOOKING AT THE PLAIN MEANING OF THE

19   TERM, AND BY LOOKING AT REFERENCE TO DICTIONARIES AND, YOU KNOW,

20   SOME EXPERT SUBMISSIONS ON WHAT THE ORDINARY PERSON IN THE ART

21   WOULD UNDERSTAND THOSE TERMS TO MEAN?  BUT CAN I THEN SAY:

22   WELL, AND THE MARKETPLACE REALITIES ARE THESE ARE TWO

23   SEPARATE -- YOU HAVE A DISTINCT MARKET FOR SERVERS AND A

24   DISTINCT MARKET FOR PC'S AND, THEREFORE, I'M GOING TO INTERPRET

25   A PC TO EXCLUDE SERVERS.  CAN I DO THAT?

1            **MR. NICODEMA:**  I UNDERSTAND YOUR QUESTION, YOUR

2    HONOR.  AND TO THE EXTENT -- YES, THESE ANTEC CITATIONS ARE

3    EXTRINSIC EVIDENCE.

4            TO THE EXTENT THAT THEY RELATE TO THE PROBLEMS

5    DISCUSSED IN THE INTRINSIC RECORD THAT THE INVENTION WAS

6    DESIGNED TO OVERCOME, THE PROBLEMS THAT MODDERS HAD WITH CABLE

7    CLUTTER AND REDUCED AIRFLOW, AND THE FACT THAT THE PATENT

8    CONTAINS NO MENTIONS OF SERVERS OR WORK STATIONS BEING USED IN

9    THE PRACTICE OF THE INVENTIONS, TO THAT EXTENT I THINK YOU CAN

10   TAKE INTO ACCOUNT WHAT ANTEC ITSELF IS TAKING ABOUT THEIR OWN

11   PRODUCTS.

12           YOUR HONOR, BUT YOUR FIRST COURSE OF ACTION, ALWAYS,

13   ALWAYS, IN CLAIM CONSTRUCTION IS THE INTRINSIC RECORD OF THE

14   PATENT.

15           AND IT'S UNMISTAKABLE:  THE EXAMINER MADE THE

16   PATENTEE LIMIT THE CLAIM TO PERSONAL COMPUTER TO OVERCOME THE

17   PRIOR ART.  NOBODY IS GOING TO ARGUE OVER THAT.

18           NOW LET'S LOOK AT THE DEFENDANT'S CONSTRUCTION A

19   LITTLE BIT.  I THINK IT'S SELF CONTRADICTING THE WAY THEY WROTE

20   IT.  THEY SAY THAT -- THEY AGREE WITH US THAT A PERSONAL

21   COMPUTER IS SOMETHING DESIGNED FOR THE INDIVIDUAL USER, BUT

22   USEABLE IN ANY APPLICATION INCLUDING SERVERS.

23           WELL, THE SECOND PART OF THEIR CONSTRUCTION IS A

24   CONCESSION THAT THESE OTHER USES AND APPLICATIONS ARE NOT FOR

25   INDIVIDUAL USERS, SO IT KIND OF IS AT ODDS WITH THE FIRST PART

1  OF THEIR CONSTRUCTION.

2          AND THEY DEFINE "SERVER" THEMSELVES IN THEIR CLAIM

3  CONSTRUCTION BRIEF AS SOMETHING DESIGNED FOR MULTI-USERS AND

4  HAVING SPECIAL FEATURES, WHICH PERSONAL COMPUTERS DO NOT.

5          JUST BRIEFLY, THE NON-EVIDENCE OF THE MODEL IBM 60,

6  95, THE HP, AND THE MAC QUADRA, I WENT OVER THIS THIS MORNING,

7  YOUR HONOR, THEY ARE CHARACTERIZED AS SERVERS.  THEY DO NOT HAVE

8  OFF-THE-SHELF SYSTEM ARCHITECTURE, AND THE POWER SUPPLIES ARE

9  MASSIVE TO COINCIDE WITH THE DIFFERENT STORAGE, COMPUTING, AND

10 NETWORKING REQUIREMENTS OF THOSE MACHINES.

11          AND THAT'S IT.

12          **THE COURT:**  OKAY.

13          **MR. MOUNT:**  THANK YOU, YOUR HONOR.

14          **THE COURT:**  YOU CAN ACTUALLY STRAIGHTEN THAT OUT.  I

15 REALIZED THE EASIER THING TO DO WAS MOVE MY MONITOR.

16          **MR. MOUNT:**  IS THAT LEGIBLE FOR YOU?

17          **THE COURT:**  IT'S FINE NOW WITH THE MONITOR OUT OF THE

18 WAY.  WHATEVER IS THE CONVENIENT WAY TO DO IT, GO AHEAD.

19          **MR. MOUNT:**  ACTUALLY, WE HAD APPROACHED OURS

20 DIFFERENTLY.

21          I THINK THE COURT BEGAN TO FOCUS CORRECTLY ON THE

22 QUESTION OF:  WHY ARE THIS -- THIS DISCUSSION ABOUT MARKET

23 SEGMENT NOT REALLY BEING AN APPROPRIATE AREA OF INQUIRY.  THE

24 QUESTION OF WHAT THE PERSONAL COMPUTER MEANS, YOU START WITH THE

25 CLAIM LANGUAGE ITSELF.

```
 1              INTERESTINGLY, BOTH SIDES AGREE ON THE FIRST PART OF

 2   THE DEFINITION THAT IS A -- WHICH IS:

 3                   "A COMPUTER DESIGNED FOR AN INDIVIDUAL

 4              USER."

 5              THAT'S PROBABLY A PRETTY GOOD DEFINITION.  AFTER THAT

 6   BOTH SIDES GO TO GENERAL QUARTERS, ONE TRYING TO INCLUDE

 7   SERVERS, ONE TRYING TO EXCLUDE SERVERS, AND A GOOD ARGUMENT

 8   COULD BE MADE THAT, FRANKLY, WHERE THE PARTIES AGREE MIGHT BE AN

 9   APPROPRIATE PLACE TO STOP, BECAUSE BEYOND THAT WE ARE ADDING

10   LIMITATIONS TO THESE CLAIMS THAT ARE NOT REQUIRED BY THE SPEC.

11              THE COURT:  LET ME STOP YOU ON THAT FOR A MOMENT.

12              MR. NICODEMA, WHY SHOULD WE BE FUSSING AROUND WITH

13   SERVER IN/SERVER OUT AND WHY SHOULDN'T THE DEFINITION BE WHAT I

14   THINK IS A PRETTY GENERIC DEFINITION:  "A COMPUTER DESIGNED FOR

15   AN INDIVIDUAL USER."

16              MR. NICODEMA:  YOU SHOULDN'T.  WE'LL TAKE THAT

17   DEFINITION.  BOTH SIDES AGREE.

18              MR. MOUNT:  BOTH SIDES HAD AGREED ON THAT DEFINITION.

19              MR. NICODEMA:  WE SHOULDN'T.  OUR CONSTRUCTION CAME

20   ON THE HEELS OF THEIR CONSTRUCTION WHERE THEY PUT THE "BUT

21   USEABLE" LANGUAGE IN THERE.  WE WANTED IT TO BE JUST THE FIRST

22   PART OF IT THAT BOTH SIDES AGREE ON:  "DESIGNED FOR AN

23   INDIVIDUAL USER."

24              MR. MOUNT:  THE IMPORTANT ISSUE WILL HAVE TO DO WITH

25   THE SCOPE OF PRIOR ART.  WE BELIEVE THE DEVICES THAT HAVE BEEN
```

1  SHOWN, WHETHER THEY'RE $3,000 OR $1,000, ARE STILL COMPUTERS FOR

2  AN INDIVIDUAL USER.  AND WE BELIEVE THAT ADDING FUNCTIONAL USES

3  ADDS PERPLEXITY.

4         **THE COURT:**  AN ARGUMENT YOU WOULD MAKE TO THE JURY, I

5  PRESUME.

6         WELL, IS THERE ANY PROBLEM WITH OUR JUST USING THAT

7  DEFINITION AND NOT EITHER EXCLUDING OR INCLUDING THE SERVER

8  CONCEPT IN THE DEFINITION OF "PERSONAL COMPUTER"?

9         **MR. NICODEMA:**  NO PROBLEM, YOUR HONOR.

10        **THE COURT:**  I'M QUITE COMFORTABLE WITH:  "A COMPUTER

11 DESIGNED FOR AN INDIVIDUAL USER."

12        **MR. NICODEMA:**  THEN WE SHOULD STOP THERE, YOUR HONOR.

13        **THE COURT:**  ALL RIGHT.  LET'S DO THAT.

14        **MR. MOUNT:**  ACTUALLY, I'VE GOT LOTS OF OTHER COMMENTS

15 TO MAKE, BUT I THINK THEY MAY BE UNNECESSARY.  SO, WE'LL SPARE

16 FURTHER DIALOGUE, AND WE CAN TALK ABOUT THE NEXT CLAIM LANGUAGE

17 ISSUE.

18        **MR. NICODEMA:**  LET ME FIND MY LITTLE CLICKER HERE.

19        **THE COURT:**  BY THE WAY, THERE WOULD BE NO SHAME IN

20 OUR DOING THESE IN EVERY ONE OF THESE.  DON'T FEEL YOU HAVE TO

21 FIND PLACES TO FIGHT ABOUT.

22        **MR. NICODEMA:**  LIKE I TOLD JUDGE LLOYD YESTERDAY, I

23 JUST FLEW IN ALL THE WAY FROM NEW JERSEY, YOU HAVE TO LET ME SAY

24 SOMETHING.

25        **MR. MOUNT:**  ON THE NEXT ITEM, YOUR HONOR, I THINK WE

1   HAVE SOME OF THE SAME THING GOING.  THERE'S AGREEMENT ABOUT THE

2   FIRST --

3           **THE COURT:**  JUST SO THAT I'M CLEAR, WE ARE ON

4   "PERSONAL COMPUTER POWER SUPPLY" NOW?

5           **MR. MOUNT:**  AND THERE'S AGREEMENT, EXCEPT THEY WANT

6   TO ADD AN ADDITIONAL PHRASE WHICH WE THINK IS UNNECESSARY AND

7   UNSUPPORTED.

8           **MR. NICODEMA:**  THIS ONE IS A LITTLE DIFFERENT, YOUR

9   HONOR, BECAUSE OUR POSITION IS THERE WAS AN EXPRESS PROSECUTION

10  HISTORY DISCLAIMER.

11          SO RATHER THAN -- RATHER THAN FIGHT LATER ON ABOUT

12  THAT DISCLAIMER, IT'S PROBABLY PRUDENT THAT, IF YOUR HONOR

13  AGREES WITH US ABOUT THE DISCLAIMER, TO PUT IT IN THE

14  CONSTRUCTION, AND I'M GOING TO SHOW YOU A COUPLE OF SLIDES

15  CONCERNING THAT DISCLAIMER.

16          NOW, HERE ARE FOUR EXCERPTS FROM THE PROSECUTION

17  HISTORY.  WHERE THE PATENTEE DISCLAIMED ALL REDUNDANT POWER

18  SUPPLIES.  HERE'S THE ARGUMENT HERE.  WE SAY -- ULTRA SAYS THE

19  PATENTEE, THE INVENTORS, DISCLAIMED ALL REDUNDANT POWER

20  SUPPLIES.  THE DEFENDANTS SAY THAT THE PATENTEES ONLY DISCLAIMED

21  A SUBCLASS RACK MOUNTED REDUNDANCE OF POWER SUPPLIES.  I THINK

22  WE HAVE THE MUCH BETTER OF THE ARGUMENT HERE WHEN YOU READ THE

23  STATEMENTS THAT THE APPLICANTS ACTUALLY MADE.

24          FOR EXAMPLE, IN THE FIRST STATEMENT, THEY UNDERLINED

25  "RACK MOUNTED," BUT SEPARATELY THEY UNDERLINED "REDUNDANT POWER

1    SUPPLIES."

2              IN THE SECOND STATEMENT, IT'S VERY CLEAR.

3                "THE WISCOMBE PATENT THEN ADDRESSES THE

4              PROBLEM WITH 'REDUNDANT POWER SUPPLIES,' NOT

5              PERSONAL COMPUTER POWER SUPPLIES."

6              THAT'S A DIRECT QUOTE.

7              THE PATENTEE DID NOT SAY THE WISCOMBE PATENT THEN

8    ADDRESSES THE PROBLEM WITH RACK MOUNTED REDUNDANT POWER

9    SUPPLIES.  HE DIDN'T SAY THAT.  HE SAID -- HE USED REDUNDANT

10   POWER SUPPLIES AS A CLASS.

11             **THE COURT:**  THIS WHICH, BY THE WAY, JUST TO PUT IT IN

12   CONTEXT, THIS WAS IN RESPONSE TO THE PATENT EXAMINER SAYING,

13   WITH RESPECT TO THE WISCOMBE PATENT, SAYING IT'S PRIOR ART

14   AND --

15             **MR. NICODEMA:**  YES, SIR.

16             **THE COURT:**  AND THIS IS THE RESPONSE TO THAT?

17             **MR. NICODEMA:**  THAT'S ABSOLUTELY CORRECT, YOUR HONOR.

18             AND THE THIRD STATEMENT, HE'S TALKING ABOUT WISCOMBE

19   AGAIN, BECAUSE THAT SEEMED TO BE A PRIOR ART INTEREST TO THE

20   EXAMINER.

21                "CONSEQUENTLY, TO ADDRESS THE PROBLEM WITH

22              'REDUNDANT POWER SUPPLIES,' THE WISCOMBE

23              PATENT  ... "

24              AND THEN IT GOES ON.

25              AGAIN, THE PATENTEE IS REFERRING TO REDUNDANT POWER

1 SUPPLIES AS A CLASS AND NOT JUST THE SUBCLASS OF RACK MOUNTED

2 REDUNDANT POWER SUPPLIES.

3            AND THEN THE LAST STATEMENT, IT'S CRYSTAL CLEAR.

4                "THE WISCOMBE PATENT RELATES TO A REDUNDANT

5            POWER SUPPLY."

6            NO QUALIFICATION AS TO THE TYPE OF REDUNDANT POWER

7 SUPPLY OR THE USE OF THE REDUNDANT POWER SUPPLY.  THE PATENTEE

8 WAS DISCLAIMING A PARTICULAR CLASS OF POWER SUPPLIES IN SEEKING

9 HIS INVENTION.  THAT'S WHY, YOUR HONOR, WE BELIEVE THERE'S A

10 CLEAR AND UNMISTAKABLE DISCLAIMER.  THAT'S WHY, YOUR HONOR, WE

11 BELIEVE THE ENTIRE CLASS OF REDUNDANT POWER SUPPLIES SHOULD BE

12 EXCLUDED FROM THE COURT'S CONSTRUCTION OF "PERSONAL COMPUTER

13 POWER SUPPLY."

14            **THE COURT:**  OKAY.  MR. MOUNT.

15            **MR. NICODEMA:**  WAIT.  DID I HAVE MORE?  I THINK I

16 HANDLED THIS.  I CEDE THE FLOOR TO MR. MOUNT.

17            **THE COURT:**  GO AHEAD.

18            **MR. MOUNT:**  THERE WAS NO MODIFICATION TO CLAIM

19 LANGUAGE IN RESPONSE TO THIS WISCOMBE PATENT, AND THESE REMARKS

20 WERE MADE WITHOUT MODIFICATION.  SO THE PHRASE "PERSONAL

21 COMPUTER POWER SUPPLY" WAS NOT ADOPTED IN RESPONSE.

22            THESE ARE SIMPLY -- WHAT HE JUST RAN THROUGH WITH YOU

23 WAS ARGUMENT MADE BEFORE THE -- BEFORE THEY HAD THE EXAMINATION

24 WITH THE INTERVIEW.

25            THEY WERE DESCRIBING WISCOMBE, AND THE WISCOMBE

 1   PATENT IS IN THE RECORD AS THE '854 PATENT, AND WISCOMBE IS

 2   CLEARLY A POWER SUPPLY.  IT IS A REDUNDANT POWER SUPPLY WITH

 3   SOME INTERVENING STRUCTURES THAT ARE DISTINGUISHED AS WELL.  BUT

 4   THAT PATENT ITSELF MAKES IT QUITE CLEAR THAT THE WISCOMBE PATENT

 5   WAS A REDUNDANT POWER SUPPLY IN A RACK MOUNTED COMPUTER SYSTEM,

 6   AND THAT'S FOUND AT COLUMN 1, LINES 28 TO 31 OF THE WISCOMBE

 7   PATENT.

 8            SO ALL THE ARGUMENTS THAT THEY JUST CITED TO YOU WERE

 9   ARGUMENTS MADE IN DISTINGUISHING THEMSELVES FROM THE WISCOMBE

10   DEVICE, WHICH WAS A RACK MOUNTED POWER SUPPLY.  I THINK REST IS

11   HANDLED IN OUR PAPERS.

12            **MR. NICODEMA:**  YOUR HONOR, ONE --

13            **THE COURT:**  GO AHEAD.

14            **MR. NICODEMA:**  -- BRIEF RESPONSE TO THAT.

15            UNDER THE LAW OF PROSECUTION HISTORY DISCLAIMER, IT

16   DOESN'T MATTER WHETHER YOU AMEND THE CLAIMS.  I CAN SEE MYSELF

17   STARTING TO TELL A WAR STORY.

18            STANDING BEFORE JUDGE NEWMAN IN THE FEDERAL CIRCUIT

19   AND SAYING:  YES, THE PATENTEE SAID 17 TIMES IN THE PROSECUTION

20   HISTORY:  MY INVENTION IS THIS AND NOT THAT, BUT HE DIDN'T PUT

21   IN THE CLAIMS.  AND SHE SAID:  SO WHAT, YOU DON'T HAVE TO.

22            ALSO, PROSECUTION HISTORY DISCLAIMER DEPENDS ON WHAT

23   THE PATENTEE SAYS AND NOT WHETHER THE EXAMINER RELIES UPON IT TO

24   ISSUE THE CLAIMS.  THAT'S ONE OF THE DEFENDANT'S OWN CASE

25   CITATIONS IN THEIR FOOTNOTE.  I THINK IT'S THE *BAYER*, B-A-Y-E-R,

1    CASE.

2              **THE COURT:**  MR. MOUNT?

3              **MR. MOUNT:**  IT HAS TO BE CLEAR AND UNMISTAKABLE.

4    WHAT THEY'VE DONE IS SHOWN YOU FOUR REFERENCES.  I HAVE TO GO

5    BACK TO THEIR PAGES.  THEY'VE GIVEN YOU FOUR REFERENCES WHERE

6    THEY'RE TALKING ABOUT WISCOMBE.  IN TWO OF THEM, I BELIEVE

7    THERE'S REFERENCE TO WISCOMBE BEING THE RACK MOUNTED SERVER

8    DEVICE WITH REDUNDANT POWER SUPPLIES, AND THAT'S WHAT THEY WERE

9    REFERRING TO.

10             IF WE WERE ON THE OTHER SIDE OF THE ARGUMENT AND THEY

11   WERE TRYING TO -- THEY WOULD NOT ACKNOWLEDGE THAT THE LANGUAGE

12   THERE IS CLEAR AND UNMISTAKABLE, WHAT THEY WERE GETTING AWAY

13   FROM:  WAS IT REDUNDANT POWER SUPPLIES OR REDUNDANT POWER

14   SUPPLIES IN THE RACK MOUNTED SETTING?

15             **THE COURT:**  ON JUST THE LEGAL QUESTION THAT

16   MR. NICODEMA BRINGS UP, THE NOTION THAT -- IF THE LANGUAGE --

17   THE CLAIM LANGUAGE DOESN'T CHANGE, DO YOU AGREE WITH HIM THAT,

18   AS A MATTER OF LAW, I CAN TAKE INTO ACCOUNT STATEMENTS BY THE

19   APPLICANT EVEN IF IT DOESN'T RESULT IN A CHANGE?

20             **MR. MOUNT:**  YOU CAN TAKE THAT INTO ACCOUNT.

21             **THE COURT:**  SO YOU AGREE ON THE LAW.  YOU SIMPLY

22   THINK WHEN I GO BACK AND LOOK AT THAT COLLOQUY BETWEEN THE

23   EXAMINER AND THE APPLICANT, THAT I'LL DETERMINE THAT IT WASN'T

24   AS ALL ENCOMPASSING AS THEY'RE SUGGESTING.

25             **MR. MOUNT:**  CORRECT.  AND THE TEST IS CLEAR AND

```
1   UNMISTAKABLE.  WERE THEY CLEAR AND UNMISTAKABLY GETTING AWAY

2   FROM ANY REDUNDANT POWER SUPPLIES, OR COULD THEY HAVE SAID:  WE

3   WERE GETTING AWAY FROM REDUNDANT POWER SUPPLIES IN THE RACK

4   MOUNTED SERVER SETTING, BECAUSE THAT'S WHAT -- THAT'S WHAT THE

5   FILE WILL SHOW YOU.  THEY WERE GETTING AWAY IN THAT SETTING.

6            THE COURT:  ARE THOSE EXCERPTS THAT PLAINTIFF

7   PROVIDED, IS THAT THE UNIVERSE OF DISCUSSION ON THIS QUESTION IN

8   THE HISTORY?

9            MR. MOUNT:  I THINK IN OUR OPENING BRIEF, WE DID

10  IDENTIFY OTHER PORTIONS THAT RELATED --

11           THE COURT:  OKAY.  I WILL GO BACK.  OKAY.  ALL RIGHT.

12  I WILL GO BACK AND LOOK AT THAT.

13           ANYTHING MORE ON PERSONAL COMPUTER POWER SUPPLY?

14           MR. NICODEMA:  NO, YOUR HONOR.  I THINK WE IDENTIFIED

15  IN THIS SLIDE, AND IN OUR BRIEF, AND IN RESPONDING TO THE

16  DEFENDANT'S BRIEF ALL OF THE PERTINENT DISCLAIMER STATEMENTS AND

17  OTHER STATEMENTS MADE ABOUT WISCOMBE.  AND WE'RE ON TO NUMBER

18  THREE ALREADY.

19           THE COURT:  I'M JUST DELIGHTED.  BUT I DON'T WANT TO

20  GET MY HOPES UP, BECAUSE I KNOW WE CAN ALWAYS SLOW DOWN.

21           MR. NICODEMA:  BE POSITIVE, YOUR HONOR.  BE POSITIVE.

22           "DIRECTLY MATED."  HERE'S THE FIGHT AGAIN:  WE SAY --

23  ULTRA SAYS, DIRECTLY MATED MEANS, "TO JOIN OR FIT TOGETHER

24  WITHOUT ANY INTERVENING STRUCTURE."

25           THE DEFENDANTS WANT IT TO BE NARROWED TO MEAN, "TO
```

1  JOIN OR FIT TOGETHER WITHOUT ANY INTERVENING CABLES."

2          AND HERE'S THE SUPPORT FOR ULTRA'S CONSTRUCTION OF

3  "DIRECTLY MATED."  I DON'T THINK EVEN THE DEFENDANTS CAN ARGUE

4  WITH THIS.  THE ORDINARY MEANING OF "TO MATE" IS TO JOIN OR FIT

5  TWO THINGS TOGETHER.  IF YOU ARE JOINING OR FITTING TWO THINGS

6  TOGETHER, THERE'S NOTHING IN BETWEEN.

7          AND HERE'S WHAT HAPPENED IN THE PROSECUTION HISTORY;

8  HERE ARE THE TWO STATEMENTS THAT WE HIGHLIGHTED IN OUR BRIEF.

9  ONE WAS IN THE MAY 15, 2006 REQUEST FOR CONTINUED EXAMINATION.

10 THE PATENTEE DISTINGUISHED WISCOMBE BECAUSE THE CONNECTORS,

11 WHICH ARE PLUGGED INTO WISCOMBE'S RESPECTIVE DC OUTPUT SOCKETS

12 WERE THROUGH AN INTERVENING PARALLELING TYPE CIRCUIT BOARD 120.

13         OUR POSITION ON THAT YOUR HONOR, THAT'S A LOT OF

14 STRUCTURE.  THAT'S NOT JUST CABLES.

15         SO THERE WAS A BROAD DISCLAIMER THERE BECAUSE THAT

16 WAS ALL THE STUFF THAT WAS INTERVENING, THIS PARALLELING TYPE

17 CIRCUIT BOARD, AND NOT JUST CABLES.

18         THE PATENTEE NEVER SAID IN THE PROSECUTION THAT

19 ULTRA'S CLAIMS WERE DIFFERENT FROM WISCOMBE OR ANYBODY ELSE JUST

20 BECAUSE OF INTERVENING CABLES.  THEY NEVER SAID THAT, AND THE

21 EXAMINER NEVER SAID THAT.

22         HERE'S A SECOND CITATION WE HAVE WITH THE PATENTEE

23 DISTINGUISHING WISCOMBE AGAIN.  HE SAID:

24             "THE WISCOMBE PATENT TEACHES AWAY FROM THE

25         CLAIMED ELEMENT THAT THE SAME CABLE THAT HAS A

1          FIRST END THAT HAS A PLUG IS DIRECTLY MATED."

2          DIRECTLY MATED, PERIOD.  OKAY?  HE WASN'T LIMITING IT

3 TO CABLES.  HE DIDN'T SAY THAT THE INTERVENING STRUCTURE MUST BE

4 A CABLE.  IT WAS ANOTHER BROAD -- BROAD WORDS OF DISCLAIMER.

5          AND HERE'S OUR POSITION ON THE DEFENDANT'S ARGUMENT.

6 THE DEFENDANT'S ARGUMENT IS INCONSISTENT WITH THE ORDINARY

7 MEANING OF THE WORD "MATE."  THE DEFENDANTS IN THEIR BRIEF,

8 AGAIN, THEY SAID:  HEY, WHOA, WHOA, WHAT ARE YOU GUYS DOING?

9          ULTRA IS RELYING ON WHAT ULTRA SAID DURING THE

10 PROSECUTION.  SO WHAT'S WRONG WITH THAT?  I THINK WE JUST HEARD

11 MR. MOUNT SAY:  IT DOESN'T MATTER WHAT THE EXAMINER DOES OR SAYS

12 LATER; IT'S WHAT THE PATENTEE SAYS THAT COUNTS.

13          THE CLAIMS DON'T HAVE TO BE AMENDED, THE EXAMINER

14 DOESN'T HAVE TO RELY ON THE ARGUMENTS TO ISSUE THE PATENT.  IF

15 THE PATENTEE MAKES CLEAR AND UNMISTAKABLE EXPRESSIONS OF

16 DISCLAIMER, THAT'S WHAT RULE THE DAYS.

17          **THE COURT:**  AS LONG AS THEY'RE CLEAR AND

18 UNMISTAKABLE.

19          **MR. NICODEMA:**  BINGO.  THAT'S CORRECT, YOUR HONOR.

20          NOW, THE EXAMINER'S COMMENTS ON LAYTON, ONE OF THE

21 THINGS THAT THE DEFENDANTS SAY IN THEIR BRIEF IS:  LET'S LOOK AT

22 THE EXAMINER; HE DIDN'T COMMENT ON ANY OF THE PATENTEE'S

23 ARGUMENTS ON WISCOMBE.  HE SAID THE PATENT WAS VALID OVER LAYTON

24 AND LAYTON HAS INTERVENING CABLES.  THE ONE THING THEY DIDN'T

25 TELL YOU WAS LAYTON WAS A REFERENCE THAT WAS NEVER APPLIED TO

1  THE CLAIMS.  IT WASN'T.

2          AND WHAT THE EXAMINER SAYS DOESN'T MATTER.  HE COULD

3  TOTALLY IGNORE THE PATENTEE'S ARGUMENTS ON WISCOMBE, AND IT

4  DOESN'T MATTER AS LONG AS THE PATENTEE MADE A CLEAR AND

5  UNMISTAKABLE DISCLAIMER.

6          AND EVEN IN THE PATENTEE'S COMMENTS ON LAYTON, IF YOU

7  LOOK AT THE QUOTE FROM THE DEFENDANT'S CLAIM CONSTRUCTION BRIEF

8  YOUR HONOR, THE EXAMINER EVEN NEVER SAYS THAT "DIRECTLY MATED"

9  IS LIMITED TO THE ABSENCE OF INTERVENING CABLES.

10          AND -- GO AHEAD.

11          **MR. MOUNT:**  THANK YOU.

12          YOUR HONOR, THE POSITION I THINK IS REASONABLY WELL

13  PRESENTED IN OUR BRIEF ON THIS MATTER.  THE REFERENCE WAS TO

14  LAYTON THEY WERE OVERCOMING.  LAYTON WAS DISCUSSED BY THE

15  EXAMINER, I THINK THAT MATTERS.  AND THE ONLY DIFFERENTIAL WITH

16  RESPECT TO LAYTON HAD THESE INTERVENING CABLES.  THAT'S HAWAII

17  WE THINK WAS INTENDED.

18          **THE COURT:**  THE CONTEXT OF THE DISCUSSION, YOU THINK,

19  WILL REFLECT THAT CABLES WAS WHAT THEY WERE TALKING ABOUT?

20          **MR. MOUNT:**  YES, THERE WERE INTERVENING CABLES THAT

21  WERE SHOWN.  I THINK I CAN SHOW YOU ON THE NEXT -- THIS IS

22  LAYTON, AND THEY WERE DISTINGUISHING A STRUCTURE WHERE THERE

23  WERE CABLES BETWEEN ONE END OF THE POWER SUPPLY -- THIS IS A

24  POWER SUPPLY THAT'S INTERRUPTED BY THESE CABLES.  THAT'S WHAT

25  THEY WERE DISTINGUISHING.

1            **THE COURT:**  WHAT'S YOUR RESPONSE TO THE EARLIER

2   ARGUMENT BY THE PLAINTIFFS THAT, JUST AS A MATTER OF DEFINITION,

3   "DIRECTLY MATED" IS CONSISTENT WITH THE NOTION THAT THERE'S

4   NOTHING -- THERE'S NO STRUCTURE IN BETWEEN.

5            **MR. MOUNT:**  I THINK THERE'S -- THAT IS FREQUENT MEANS

6   OF DESCRIBING "DIRECTLY MATED."  I ACKNOWLEDGE THAT.

7            **THE COURT:**  OKAY.  SO WHY SHOULD I INCLUDE

8   INTERVENING STRUCTURE.

9            **MR. MOUNT:**  IF IT IS HELPFUL TO BETTER UNDERSTAND THE

10  CLAIMS, IT CAN STICK WITH THE EARLIER DEFINITION OR WITH THIS

11  FURTHER ENHANCEMENT.

12            **THE COURT:**  WELL, I MEAN, BOTH OF YOU PROPOSE TO ADD

13  SOMETHING THAT PROVIDES FURTHER DETAIL THAT SAYS, YOU KNOW, BY

14  THE WAY, IT'S DIRECT, AND BY THAT WE MEAN YOU ARE NOT GOING TO

15  HAVE THIS IN BETWEEN, EFFECTIVELY IS WHAT IT'S SAYING.

16            **MR. MOUNT:**  SURE.  AND AGAIN --

17            **THE COURT:**  WHY IS IT THAT SINGLING OUT STRUCTURE IS

18  TELLING THEM ANYTHING?

19            **MR. MOUNT:**  I DON'T KNOW THAT IT IS, YOUR HONOR.  I

20  THINK WE WOULD BOTH BE EQUALLY WELL OFF WITH THE PHRASE, "TO

21  JOIN OR FIT TOGETHER," AS A DEFINITION.  WE ARE IN AGREEMENT ON

22  THE FIRST -- "TO JOIN OR FIT TOGETHER" IS WHAT "DIRECTLY MATED

23  WITH" MEANS.  EACH SIDE GOT INVOLVED IN ADDING -- THEY SAID

24  "WITHOUT INTERVENING STRUCTURE."  WE SAY WITHOUT "INTERVENING

25  CABLES."  BUT "TO JOIN OR FIT TOGETHER" WOULD BE THE NORMAL

1  MEANING OF "MATE."

2          **MR. NICODEMA:**  YOUR HONOR, WE WOULD BE WILLING TO

3  LIMIT THE --

4          WE WOULD BE WILLING TO LIMIT THE CONSTRUCTION TO

5  THESE WORDS:  "TO JOIN OR FIT TOGETHER," JUST THE WAY THE

6  DICTIONARY SAYS.

7          **MR. MOUNT:**  TO JOIN OR FIT TOGETHER, PERIOD.

8          **THE COURT:**  OKAY.

9          **MR. MOUNT:**  THANK YOU.

10         **MR. NICODEMA:**  ALL RIGHT, YOUR HONOR.  WE'RE UP TO

11  NUMBER FOUR: "A PLURALITY OF COMPONENT CABLES."

12         THE PARTIES' CONSTRUCTION ARE IN AGREEMENT EXCEPT FOR

13  ONE WORD, THE WORD "DIFFERENT."  WE HAVE THE WORD "DIFFERENT,"

14  THAT:

15              "TWO OR MORE CABLES, EACH OF WHICH IS

16              ATTACHABLE TO A DIFFERENT COMPONENT SELECTED

17              FROM THE GROUP, INCLUDING..."

18         AND THEN THE (A) THROUGH (K) ARE ALL OF THE

19  COMPONENTS RECITED IN THE PREAMBLE.

20         AND HERE IS OUR SUPPORT FOR THE WORD "DIFFERENT":

21         THE SPECIFICATION -- THE PATENTEE ACTUALLY DEFINED

22  THE WORD "COMPONENT" IN THE SPECIFICATION.  AND THIS IS WHAT IS

23  HE SAID:  "THUS, AS USED HEREIN, THE TERM 'COMPONENT',"

24  SINGULAR.

25              "...IS INTENDED TO INCLUDE BUT NOT BE

1             LIMITED TO ONE OR MORE MOTHERBOARDS, FLOPPY DISK

2             DRIVES," ET CETERA.

3             AND THE PATENTEE GOES ON TO REPEAT THE THINGS THAT

4 ARE IN THE PREAMBLE.

5             SO BY SAYING THE TERM "COMPONENT" IN THE SINGULAR

6 INCLUDES ONE OR MORE OF THE PREAMBLE COMPONENTS, WE READ THAT TO

7 MEAN THAT MORE THAN ONE ITEM, FOR EXAMPLE, TWO HARD DISK DRIVES,

8 IS STILL A COMPONENT, A TYPE OF COMPONENT.  SO, FOR EXAMPLE, IF

9 THERE ARE TWO HARD DISK DRIVES, THEN THESE TWO ITEMS ARE STILL A

10 SINGLE TYPE OF COMPONENT, A SINGLE COMPONENT.

11            SO BASED ON THE DEFINITION OF "COMPONENT" IN THE

12 SPECIFICATION, THE CLAIM TERM "A PLURALITY OF COMPONENT CABLES"

13 SHOULD BE CONSTRUED TO MEAN TWO OR MORE CABLES, EACH OF WHICH IS

14 ATTACHABLE TO A DIFFERENT COMPONENT.

15            I DON'T BELIEVE THE DEFENDANT'S CONSTRUCTION MAKES

16 SENSE IN LIGHT OF WHAT THE PATENT DISCLOSES, YOUR HONOR, BECAUSE

17 UNDER THEIR CONSTRUCTION, YOU COULD HAVE A POWER SUPPLY WITH ALL

18 THE CABLES CONNECTED TO ONE THING AND NOTHING ELSE.  I DON'T

19 THINK THAT'S WHAT THIS INVENTION IS ABOUT AT ALL, BECAUSE THE

20 WHOLE PURPOSE OF THIS INVENTION, THE PROBLEMS THAT THE INVENTORS

21 WERE TRYING TO SOLVE, IS TO GET RID OF THE CABLE CLUTTER, FIX

22 THE AIRFLOW PROBLEM, ONLY USE THE THINGS YOU NEED, ONLY USE THE

23 CABLES YOU NEED, AND CONNECT TO WHAT YOU WANT TO.  IF EVERYTHING

24 HAD TO BE CONNECTED TO ONE THING, THAT WOULD DEFEAT THE WHOLE

25 PURPOSE.

1          I THINK THE PREAMBLE, THE WAY IT READS, YOUR HONOR,

2    IS CONSISTENT WITH ULTRA'S CONSTRUCTION ALSO.  THIS IS THE NEXT

3    SLIDE, 68.  LET'S SEE WHAT THE PREAMBLE SAYS.  IT SAYS:

4                "PROVIDING DC CURRENT FROM THE POWER SUPPLY

5            TO AT LEAST THREE COMPONENTS, WHEREIN EACH

6            COMPONENT IS SELECTED FROM THE GROUP,

7            INCLUDING ..."

8          AND THEN IT RECITES A THROUGH K, AND A THROUGH K ARE

9    THE SAME A THROUGH K THAT ARE IN BOTH PARTIES' PROPOSED

10   CONSTRUCTIONS.  AND EVERYBODY AGREES THE PREAMBLE IS A

11   LIMITATION OF CLAIMS ONE, FOUR AND SEVEN.  SO BY ITS TERMS, THE

12   PREAMBLE MEANS POWER MUST BE SUPPLIED TO AT LEAST THREE

13   DIFFERENT COMPONENTS WITHIN THE PREAMBLE GROUP, AND THE BODIES

14   OF THE CLAIMS TELL YOU HOW TO DO THAT.

15         FOR EXAMPLE -- LET'S TAKE CLAIM 4 AS AN EXAMPLE.

16   "INCLUDES A DC OUTPUT CABLE," AND THAT COULD BE USED TO POWER

17   THE MOTHERBOARD.  AND "A PLURALITY OF COMPONENT CABLES," AND

18   THOSE COULD BE USED TO POWER AT LEAST TWO ADDITIONAL PREAMBLE

19   COMPONENTS.

20         SO THE WAY THE CLAIMS ARE CONSTRUCTED, THEY ARE

21   CONSISTENT WITH WHAT THE PREAMBLE SAYS YOU HAVE TO DO, WHICH IS

22   TO PROVIDE DC CURRENT FROM THE POWER SUPPLY TO AT LEAST THREE OF

23   THE LISTED COMPONENTS.

24         OUR CONSTRUCTION IS ALSO CONSISTENT WITH FIGURE 7 OF

25   THE PATENT, WHICH SHOWS TWO DIFFERENT COMPONENTS BEING POWERED.

```
1   THE YELLOW WIRE IS THE MOTHERBOARD CABLE, AND THE RED IS TO

2   ANOTHER COMPONENT CABLE, AND IT TALKS ABOUT THESE BEING

3   INDIVIDUAL WIRES THAT POWER DIFFERENT THINGS.  AND THE

4   DEFENDANTS DON'T DISPUTE WHAT FIGURE 7 SAYS OR THE -- WHAT IT

5   ILLUSTRATES, OR THE PORTION OF THE PATENT SPECIFICATION WHICH

6   WE QUOTE ABOVE WHICH DESCRIBES FIGURE 7.

7            NOW, IN THE DEFENDANT'S BRIEF THEY MADE TWO

8   ARGUMENTS, TWO ARGUMENTS TO SAY THAT -- TO SUPPORT THEIR

9   POSITION THAT OUR CONSTRUCTION IS NOT THE CORRECT ONE.

10           SO THE FIRST THING THEY SAY IS THAT IF YOU ADOPT

11  ULTRA'S CONSTRUCTION OF "PLURALITY OF COMPONENT CABLES," IT

12  WOULD EXCLUDE MULTIPLE SOCKETS BEING ATTACHED TO THE

13  MOTHERBOARD.

14           WELL, THAT'S NOT TRUE, BECAUSE HERE IS SOME CLAIM

15  LANGUAGE THAT'S IN ALL THE CLAIMS.  AND WHAT I HIGHLIGHTED IN

16  BOLD ITALICS IS THE KEY LANGUAGE HERE.  IT SAYS THAT -- THAT THE

17  COMPONENT CABLES HAVE AT LEAST TWO ENDS, AND THE SECOND END OF

18  EACH OF THE COMPONENT CABLES IS DIRECTLY MATED WITH AT LEAST ONE

19  OF THE COMPONENTS, BUT THERE ARE NO LIMITATIONS ON HOW.

20           IT DOESN'T -- IT DOESN'T RESTRICT THE NUMBER OF

21  CONNECTORS THAT CAN BE AT THE END OF THOSE CABLES AT THAT SECOND

22  END.  THERE COULD BE CONNECTORS GOING TO THE MOTHERBOARD, TWO OF

23  THEM, AND THEN A CONNECTOR OR MULTIPLE CONNECTORS GOING TO OTHER

24  COMPONENTS.  THE CLAIM IS NOT LIMITING.

25           SO THE CLAIM LANGUAGE DOES NOT EXCLUDE CABLE
```

1    CONFIGURATIONS IN WHICH EACH OF THE COMPONENT CABLES HAS

2    MULTIPLE ENDS OR MULTIPLE CONNECTORS FOR ATTACHMENT TO VARIOUS

3    COMPONENTS RECITED IN THE PREAMBLE, INCLUDING THE MOTHERBOARD.

4              ALL WE HAVE TO DO IS LOOK AT THE PLAIN LANGUAGE OF

5    THE CLAIM, YOUR HONOR.  IT'S NOT LIMITING IN THAT REGARD.

6              **THE COURT:**  WELL, BUT YOUR PROPOSED CONSTRUCTION,

7    WHEN IT SAYS, TWO OR MORE COMPONENT CABLES, EACH -- EACH OF

8    WHICH IS ATTACHABLE TO A DIFFERENT COMPONENT SELECTED FROM --

9              **MR. NICODEMA:**  THAT'S RIGHT.

10             **THE COURT:**  ISN'T THAT -- ISN'T THE MEANING OF THAT

11   PROPOSED CONSTRUCTION, DOESN'T THAT -- THAT MEANING ONE TAKES

12   FROM THAT CONSTRUCTION IS THAT IT CAN'T BE -- IF YOU HAVE THREE

13   OR FOUR OR FIVE CABLES, YOU CANNOT CONNECT TO THE SAME ITEM IN

14   THE GROUP.

15             **MR. NICODEMA:**  NO, BECAUSE OF --

16             **THE COURT:**  WELL, THEN THE POSITIONING OF THE WORDS

17   IS POSSIBLY PROBLEMATIC.  YOU'RE SAYING IT DOESN'T MEAN THAT,

18   BUT EACH OF WHICH IS ATTACHABLE TO A DIFFERENT COMPONENT.  SO

19   EACH CABLE HAS TO BE IN A DIFFERENT --

20             **MR. NICODEMA:**  WELL, IT SAYS "ATTACHABLE."

21   "ATTACHABLE."

22             **THE COURT:**  YES.

23             **MR. NICODEMA:**  AND I THINK THAT'S A KEY WORD.

24   "ATTACHABLE TO EACH CABLE" IS ATTACHABLE TO A DIFFERENT

25   COMPONENT, BUT THAT DOESN'T EXCLUDE IT FROM HAVING OTHER

1    CONNECTORS THAT CAN BE ATTACHED TO THE SAME COMPONENT AS WELL.

2            THEY HAVE TO BE AT LEAST ATTACHABLE TO DIFFERENT

3    COMPONENTS, BUT THE ENDS OF THOSE CABLES CAN HAVE MANY, MANY

4    CONNECTORS, AND THAT'S WHY I WAS POINTING OUT THAT CLAIM

5    LANGUAGE, YOUR HONOR.

6            **THE COURT:**  SO, YOU'RE FOCUSING ON THIS CAPABILITY

7    CONCEPT:  IT'S GOT TO BE IT HAS TO BE CAPABLE OF ATTACHMENT

8    TO --

9            **MR. NICODEMA:**  THAT'S CORRECT.  THAT'S WHY WE USE --

10           **THE COURT:**  IT DOESN'T MEAN IT ACTUALLY GETS ATTACHED

11   TO DIFFERENT -- OF THE GROUP, NECESSARILY.

12           **MR. NICODEMA:**  THAT'S CORRECT.  THAT'S WHY WE USE THE

13   WORD "ATTACHABLE" AND NOT "ATTACHED."

14           BECAUSE, REMEMBER, THESE CABLES ARE MODULAR.  IT'S

15   APPROPRIATE TO USE THE WORD "ATTACHABLE," BECAUSE YOU ONLY USE

16   THE ONES YOU NEED.  THEY DON'T HAVE TO BE ATTACHED TO ANYTHING,

17   AND I THINK -- AND I THINK THE KEY TO FOCUS ON IS -- AND I'LL GO

18   BACK --

19           **THE COURT:**  RATHER THAN "ATTACHABLE," ISN'T WHAT

20   YOU'RE TRYING TO SAY:  EACH OF WHICH -- IF I UNDERSTAND YOUR

21   MEANING -- EACH OF WHICH IS SUBJECT TO ATTACHMENT TO A

22   DIFFERENT...  IN OTHER WORDS, IT COULD BE ATTACHED TO DIFFERENT

23   OF THE ITEMS, IS THAT WHAT YOU ARE TRYING TO -- IS THAT WHAT

24   YOU'RE SAYING?  OR AM I GETTING IT WRONG?

25           **MR. NICODEMA:**  SUBJECT TO ATTACHMENT --

1              **THE COURT:**  I'M NOT SUGGESTING THAT AS A

2    CONSTRUCTION, BECAUSE I THINK THAT MAY MAKE IT MORE CONFUSING.

3              **MR. NICODEMA:**  THAT'S WHAT I MEAN.

4              **THE COURT:**  I'M TRYING TO UNDERSTAND IT, BECAUSE I DO

5    THINK THAT IT IS SUBJECT TO THE INTERPRETATION THAT, EVEN THOUGH

6    YOU'RE SAYING THAT'S NOT WHAT IT MEANS, I THINK IT IS SUBJECT TO

7    THE INTERPRETATION THAT AT THE END OF THE DAY, THERE MUST BE

8    ATTACHMENT TO DIFFERENT ITEMS.  IT'S NOT JUST:  WELL, YOU COULD

9    ATTACH IT.

10             IT HAS TO BE ABLE TO BE ATTACHED TO DIFFERENT ITEMS,

11   BUT IT, IN FACT, IN REALITY, MUST BE ATTACHED TO DIFFERENT --

12   SUCH THAT YOU COULDN'T THEN HAVE TWO CABLES GOING TO THE

13   MOTHERBOARD, WHICH IS THEIR PROBLEM.

14             **MR. NICODEMA:**  THAT'S WHY I FOCUSED, YOUR HONOR, ON

15   THIS CLAIM LANGUAGE, AND SPECIFICALLY THE WORDS THAT SAY:

16                  "A SECOND END OF EACH OF THE COMPONENT

17                  CABLES IS DIRECTLY MATED WITH AT LEAST ONE OF

18                  THE COMPONENTS."

19             ALL THAT SAYS -- THAT DOESN'T SAY HOW MANY CONNECTORS

20   THERE ARE AT THE END.

21             **THE COURT:**  OKAY.  IN THE CONTEXT OF THE FULL CLAIM

22   LANGUAGE, YOU'RE SAYING IT'S --

23             **MR. NICODEMA:**  YES, SIR.  YOU ALWAYS HAVE TO READ

24   CLAIM TERMS IN THE FULL CONTEXT OF THE REST OF THE CLAIM

25   LANGUAGE.

1          **THE COURT:**  YOU DO.

2          **MR. NICODEMA:**   THE DEFENDANTS MAKE A SECOND ARGUMENT

3    THAT ULTRA'S CONSTRUCTION OF THE TERM "A PLURALITY OF COMPONENT

4    CABLES" EXCLUDES A DC OUTPUT CABLE HAVING MULTIPLE CONNECTIONS

5    AT THE MOTHERBOARD.

6          ALL RIGHT.  HERE'S THE CLAIM LANGUAGE FROM THE

7    CLAIMS ABOUT THE DC OUTPUT CABLE.  IT SAYS:

8                 "AT LEAST ONE DC OUTPUT CABLE, WHEREIN A

9                 FIRST END OF THE DC OUTPUT CABLE IS FIXED TO THE

10                 POWER SUPPLY HOUSING; WHEREIN A SECOND END OF

11                 THE DC OUTPUT CABLE TERMINATES WITH AT LEAST ONE

12                 DC OUTPUT CABLE PLUG OR SOCKET."

13          THAT DOESN'T EXCLUDE MULTIPLE CONNECTIONS TO THE

14    MOTHERBOARD.  ON ITS FACE IT DOESN'T EXCLUDE IT.

15          SO OUR SUMMARY OF THAT, WHICH COMES RIGHT OUT OF OUR

16    BRIEF IS:

17                 "THE BREADTH OF THIS LIMITATION CLEARLY

18                 ENCOMPASSES ONE OR MORE DC OUTPUT CABLES."

19          IT SAYS, "AT LEAST ONE."

20                 "EACH DC OUTPUT CABLE HAVING ONE OR MORE DC

21                 OUTPUT PLUGS OR SOCKETS."

22          IT SAYS "AT LEAST ONE" IN THE CLAIM.

23          BY NOT HAVING LIMITING LANGUAGE IN THERE, THE

24    CONCLUSION IS THESE "ONE OR MORE DC OUTPUT CABLE PLUGS OR

25    SOCKETS" ARE AVAILABLE FOR DIRECT ATTACHMENT TO THE MOTHERBOARD,

1   AND "ONE OR MORE DC OUTPUT CABLE -- " AND IT CAN ALSO HAVE ONE

2   OR MORE DC OUTPUT CABLE PLUGS OR SOCKETS AVAILABLE FOR DIRECT

3   ATTACHMENT TO DIFFERENT PREAMBLE COMPONENTS.

4           IT'S THE ABSENCE OF WORDS OF LIMITATION ON WHAT CAN

5   BE AT THE ENDS OF THESE CABLES THAT SUPPORTS OUR CONSTRUCTION.

6           **THE COURT:**  MR. MOUNT?

7           **MR. MOUNT:**  YOUR HONOR, THERE ARE OTHER PORTIONS OF

8   THE CLAIM.  THEY REFER TO CLAIM 4 TO TRY TO SUPPORT THEIR

9   ASSERTION THAT YOU SHOULD ADD THIS DIFFERENT TERM IN.  AND IT IS

10  TRUE THAT THE PLAIN READING OF THIS PARAGRAPH, THE WAY THEY POSE

11  IT IS -- WOULD EXCLUDE THE STRUCTURE THAT THEY ARE SELLING AND

12  THE STRUCTURE THAT THEY'RE CLAIMING, BECAUSE THEY ARE SHOWING --

13  THEY ARE SHOWING TWO CABLES GOING -- THIS IS THE MOTHERBOARD.

14  THIS IS ONE PLACE WHERE THE POWER IS GOING.  THERE'S ANOTHER

15  PLACE WHERE THE POWER IS GOING.  THERE'S THE 24-PIN AND THE

16  12-VOLT PIN.  AND THEY ARE ADDING -- THEIR CLAIMS, IF YOU ADD

17  THIS PHRASE, THAT THE CABLES HAVE TO BE ATTACHABLE TO DIFFERENT,

18  WOULD NOT INCLUDE THE STRUCTURE THAT THEY'RE SELLING AND THE

19  STRUCTURE THEY CLAIM.  (INDICATING.)

20          **THE COURT:**  MR. NICODEMA IS SUGGESTING IT WOULD

21  BECAUSE THERE'S NOTHING INCONSISTENT WITH TWO CABLES BEING

22  ATTACHED TO THE MOTHERBOARD IN HIS INTERPRETATION --

23          **MR. MOUNT:**  WELL --

24          **THE COURT:**  -- HIS PROPOSED CONSTRUCTION, BECAUSE

25  HE'S SAYING, WELL, ALL THAT'S SAYING IS THOSE SAME CABLES HAVE

1   TO BE CAPABLE OF BEING ATTACHED TO MORE THAN ONE, IF I

2   UNDERSTOOD HIS ARGUMENT.

3                **MR. MOUNT:**  CAPABLE OF --

4                **THE COURT:**  WELL, THAT'S THE ARGUMENT.

5                **MR. PASQUINELLI:**  THAT'S NOT WHAT THEIR PRODUCT IS.

6                **MR. MOUNT:**  THAT'S TRUE.  THAT'S NOT WHAT THEIR

7   PRODUCT IS.  IT WOULDN'T COVER THEIR PRODUCT, AS I UNDERSTAND

8   WHAT THEY'RE SELLING.

9                **MR. NICODEMA:**  YOUR HONOR, IT WOULD COVER THE

10  PRODUCT.  AND YOU SAID SOMETHING VERY IMPORTANT THIS MORNING.

11  YOU RECOGNIZE THAT UNDER THE LAW, YOU CANNOT LOOK AT THE ACCUSED

12  DEVICE IN CONSTRUING CLAIMS.  YOU ALSO CAN'T LOOK AT THE

13  PATENTED DEVICE.  BUT WE DO COVER IT.  THE PLAIN LANGUAGE OF THE

14  CLAIM SUPPORTS US.

15               **MR. PASQUINELLI:**  THAT'S NOT TRUE.

16               **THE COURT:**  WELL, LET'S NOT HAVE EXPRESSIONS FROM

17  PARTICIPANTS.

18               GO AHEAD, MR. MOUNT, IF YOU HAVE SOMETHING YOU WANT

19  TO --

20               **MR. MOUNT:**  I THINK -- I THINK THAT THE INCLUSION OF

21  THE WORD "DIFFERENT," AGAIN, THEY'RE ADDING WORDS THAT DON'T

22  BELONG.

23               WHAT WE HAVE DONE IN TERMS OF OUR CONSTRUCTION IS WE

24  HAVE BROUGHT IN WHAT THE CLAIM LANGUAGE IS AND ARE RELYING ON

25  IT.  YOU GO BACK TO THE CLAIM LANGUAGE ITSELF.  WHAT YOU'RE

1    TALKING ABOUT -- THERE'S NOTHING IN THE PREAMBLE THAT'S BEING

2    BROUGHT IN AS LIMITATION WHERE IT SUPPORTS THEIR ASSERTION THAT

3    THERE HAVE TO BE DIFFERENT COMPONENTS THAT -- WHAT THE -- IT

4    SAYS IT MUST BE ONE OF THE FOLLOWING LISTED ITEMS.  IT DOESN'T

5    SAY THAT THEY HAVE TO BE DIFFERENT ONES.  IT JUST SAYS THEY MUST

6    BE ATTACHED TO ONE OR MORE OF THESE DEVICES, AND THEY SIMPLY

7    ADDED THIS NEW LIMITATION TO TRY TO NARROW THE SCOPE OF PRIOR

8    ART.  BUT THERE'S NO SUPPORT FOR THAT SUGGESTION THAT THIS

9    ADDITIONAL TERM GETS INTO THE CLAIM LANGUAGE.

10          THE PREAMBLE IS BEING BROUGHT IN, DOES NOT SUGGEST

11   THE WORD DIFFERENT WAS EVER USED OR INTENDED TO BE USED, AND THE

12   BEST -- UNLESS THERE'S SOME COMPELLING REASON TO BRING LANGUAGE

13   INTO THE CLAIMS, IT'S NOT JUSTIFIED.

14          **MR. NICODEMA:**  YOUR HONOR, I'M READY TO MOVE ON TO

15   THE SOCKET ELEMENTS.

16          **THE COURT:**  DC -- SO SOCKET, FIRST OF ALL, OR --

17          **MR. NICODEMA:**  I PUT THESE IN SEPARATE CHARTS, BUT WE

18   ARE GOING TO TAKE THEM AS A GROUP:  SOCKETS, DC OUTPUT SOCKETS,

19   AND DC OUTPUT CABLE SOCKETS.  HERE IS THE FIGHT HERE:  WE'RE

20   BASICALLY THE SAME UNTIL WE GET TO THE END.  I THINK I PROBABLY

21   HAVE A MISTAKE HERE IN THEIR CONSTRUCTION.

22          I THINK THEIR CONSTRUCTION REQUIRES THAT THE SOCKET

23   BE FIXED TO THE POWER SUPPLY HOUSING.  THAT'S WHY I PUT IN THAT

24   NEGATIVE LIMITATION, "NOT NECESSARILY A POWER SUPPLY HOUSING."

25   MAYBE WE SHOULD STOP HERE.

1          DID I MAKE A MISTAKE, GENTS?

2          **MR. PASQUINELLI:**  NO, THAT'S OUR CONSTRUCTION.

3          **MR. MOUNT:**  YOU ADDED THAT PARENTHETICAL PHRASE.  I

4  WAS WONDERING, TOO WHAT -- INTERESTINGLY, THERE'S MUCH AGREEMENT

5  THROUGH THE WORD "STRUCTURE."

6          **MR. NICODEMA:**  YOUR HONOR --

7          **THE COURT:**  EVEN BEYOND "STRUCTURE," YOU HAVE "SUCH

8  AS A HOUSING."

9          **MR. NICODEMA:**  YOUR HONOR, AS LONG AS -- AS LONG AS

10 THE CONSTRUCTION SAYS "SUCH AS A HOUSING," AND NOT "SUCH AS THE

11 POWER SUPPLY HOUSING -- " THEY PROBABLY ARGUE THAT IN THEIR

12 BRIEF BECAUSE I DON'T THINK I'M DELUSIONAL HERE.  I'M HAPPY TO

13 TAKE OUT -- OOPS.  I'M HAPPY TO TAKE OUT THIS PART.

14         **THE COURT:**  "NOT NECESSARILY... "  THE PARENTHETICAL

15 YOU ARE WILLING TO TAKE OUT?

16         **MR. NICODEMA:**  YES, AS LONG AS IT SAYS, "SUCH AS A

17 HOUSING," AND HERE'S WHY -- HERE'S WHY:  THE SPECIFICATION OF

18 THE PATENT DEFINES --

19         **MR. MOUNT:**  WE AGREE WITH THAT, YOUR HONOR.

20         **MR. NICODEMA:**  OKAY.  I CAN STOP RIGHT THERE?

21         **MR. MOUNT:**  I THINK WHAT HE'S SAYING IS HE'S READY TO

22 DROP THE PARENTHETICAL PHRASE --

23         **THE COURT:**  JUST ONE AT A TIME SO OUR POOR COURT

24 REPORTER CAN --

25         **MR. NICODEMA:**  I JUST WANTED YOUR HONOR TO SEE WHERE

1    I WAS COMING FROM.  WE TALK ABOUT THIS IN OUR BRIEFS.

2              HOLD ON, YOUR HONOR.

3          **MR. NICODEMA:**  RIGHT.  I GUESS THE ONLY DIFFERENCE

4    BETWEEN OUR CONSTRUCTIONS THEN IS WE'RE SPECIFIC TO THE

5    PARTICULAR DEVICE.

6          **THE COURT:**  YES, I NOTICED THAT.

7          **MR. NICODEMA:**  AND I THINK WE NEED TO HAVE THAT IN

8    THERE, BECAUSE LOOK, THE CLAIM ELEMENT SAYS "DC OUTPUT CABLE

9    SOCKET."  IT HAS TO BE A DC DEVICE AND NOT JUST A DEVICE.  OKAY?

10              BUT JUST SO YOUR HONOR DOESN'T THINK I'VE LOST IT, IN

11   THE PATENT THEY SPECIFICALLY -- WE SPECIFICALLY DEFINE "SOCKET"

12   AS SOMETHING THAT'S FIXED TO A RELATIVELY FIXED STRUCTURE SUCH

13   AS A HOUSING.  WE DIDN'T SAY -- WE DIDN'T LIMIT IT TO POWER

14   SUPPLY HOUSING.  THAT'S REALLY IT.  AND I CAN SKIP ALL OF THIS.

15         **THE COURT:**  WELL, LET ME GO BACK HERE AND ASK

16   MR. MOUNT:  THE DIFFERENCE, PUTTING ASIDE FOR A MOMENT THE

17   PARENTHETICAL IS AT THE BEGINNING OF THE PROPOSED CONSTRUCTION

18   AS MR. NICODEMA POINTS OUT, THE DEVICE IS FURTHER IDENTIFIED AS

19   THE DC OUTPUT DEVICE, AND THE PROPOSED CONSTRUCTION FROM THE

20   DEFENSE IS "A DEVICE."  IS THAT OF ANY CONSEQUENCE?

21         **MR. MOUNT:**  I'M SORRY?

22         **MR. NICODEMA:**  YOUR HONOR, IF YOU LOOK AT SOCKETS, DC

23   OUTPUT SOCKETS AND DC OUTPUT CABLE SOCKETS, EACH OF OUR

24   CONSTRUCTIONS OF THOSE --

25         **THE COURT:**  LET ME STOP YOU GUYS.

```
 1              MR. NICODEMA:  OKAY.

 2              THE COURT:  I UNDERSTAND AS YOU ARE GETTING INTO

 3  IT -- AND I'M FOLLOWING YOU, BUT THE RECORD WHEN IT GOES TO THE

 4  FEDERAL CIRCUIT, AS IT PERHAPS WILL, THEY WON'T BE ABLE TO

 5  FOLLOW IT.

 6              MR. NICODEMA:  UNDERSTOOD.

 7              THE COURT:  SO LET'S DO IT ONE AT A TIME.

 8              GO AHEAD, MR. NICODEMA.

 9              MR. NICODEMA:  IT'S JUST THAT FOR THE TERM, "SOCKET,"

10  "DC OUTPUT SOCKET" AND "DC OUTPUT CABLE SOCKET," THEY ARE ALL DC

11  OUTPUT DEVICES.  THAT'S WHY WE PUT THOSE WORDS IN EACH OF OUR

12  CONSTRUCTIONS.  THAT'S ALL.  THEY ARE NOT JUST DEVICES.

13              SEE, IN ONE OF THEM, THEY ACTUALLY PUT A DC OUTPUT

14  DEVICE, THE DEFENDANTS.  BUT THEN FOR SOCKETS THEY PUT IT IN

15  THERE, BUT FOR DC OUTPUT SOCKETS, THEY JUST PUT "A DEVICE," AND

16  SINCE THE CLAIM LANGUAGE IS EVEN MORE SPECIFIC, I WOULD THINK

17  THEIR CONSTRUCTION SHOULD BE MORE SPECIFIC, AND THEN WHEN WE

18  HAVE DC OUTPUT CABLE SOCKET, THEY JUST SAY "A DEVICE."  WE WANT

19  IT TO BE "A DC OUTPUT DEVICE."

20              THE COURT:  ALL RIGHT.  MR. MOUNT, HOW ABOUT A DC

21  OUTPUT DEVICE?

22              MR. MOUNT:  MAY I?

23              THE COURT:  YOU MAY.

24              MR. MOUNT:  JUST ONE MOMENT, IF I COULD.  I JUST WANT

25  TO MAKE SURE THAT --
```

1          **THE COURT:** CERTAINLY. IS DC OUTPUT SOCKET, DC

2     OUTPUT SOCKET DC OUTPUT CABLE SOCK.

3          **MR. MOUNT:** YOUR HONOR, I DON'T SEE WHY THERE'S

4     DISAGREEMENT ABOUT THAT FIRST PHRASE. I THINK THE BRIEFING HAD

5     ALL BEEN TIED IN WITH THE HOUSING PHRASE.

6          **THE COURT:** THE PARENTHETICAL?

7          **MR. MOUNT:** PARENTHETICAL. AND IF --

8          **THE COURT:** ALL RIGHT.

9          **MR. MOUNT:** BUT I MAY RESERVE -- IF THERE'S ANY

10    DISAGREEMENT ABOUT THAT, I WOULD RAISE IT BEFORE I FINISH MY

11    FINAL ARGUMENT TODAY.

12         **THE COURT:** ALL RIGHT. WE WILL MOVE ON AT THIS

13    JUNCTURE, BARRING SOME FURTHER INDICATION THAT THERE'S A

14    DISPUTE.

15         WE ARE GOING TO ADOPT THE CONSTRUCTION OF DC OUTPUT

16    DEVICE IN TERMS OF THE SOCKET, AND, ACTUALLY, WITH RESPECT TO

17    THE OUTPUT SOCKET, OUTPUT CABLE SOCKET, IT'S GOING TO SAY "A DC

18    OUTPUT DEVICE," AND WE WILL PUT WHAT BOTH SIDES AGREE AND

19    EXCLUDE THE PARENTHETICAL.

20         **MR. NICODEMA:** YES, YOUR HONOR.

21         **MR. MOUNT:** THANK YOU.

22         **THE COURT:** ALL RIGHT. WHAT'S OUR NEXT ONE?

23         **MR. NICODEMA:** I CAN SKIP THESE.

24         THEIR INDEFINITE- -- LET ME GO TO THEIR

25    INDEFINITENESS ARGUMENT. THAT'S WHY I PUT THAT PARENTHETICAL IN

1   THERE.  I'M NOT CRAZY.  THERE WAS A REASON FOR IT, BUT WE DON'T

2   NEED IT.

3            ULTRA'S CONSTRUCTION OF THE SOCKET ELEMENTS, THE

4   DEFENDANTS SAY THAT REQUIRES -- THAT REQUIRES THE SOCKETS TO BE

5   SIMULTANEOUSLY FIXED AND NOT FIXED TO POWER SUPPLY HOUSING.  I

6   WAS SCRATCHING MY HEAD A LITTLE BIT TO TRY TO FIGURE OUT WHAT

7   THEY WERE TALKING ABOUT.

8            I GUESS THEY MEANT BECAUSE OF THE PARENTHETICAL, BUT

9   THE PATENT IS VERY CLEAR THAT THE DC OUTPUT CABLE SOCKETS ARE

10  ATTACHED TO A RELATIVELY FIXED STRUCTURE SUCH AS A HOUSING.  IT

11  DOESN'T HAVE TO BE THE POWER SUPPLY HOUSING.

12           THE PATENTEES WERE VERY CLEAR IN THE CLAIM LANGUAGE

13  WHEN THEY WANTED SOMETHING TO BE FIXED TO THE POWER SUPPLY

14  HOUSING.  THEY SAID POWER SUPPLY HOUSING AND THE WORD "HOUSING"

15  IS USED THROUGHOUT THE SPECIFICATION IN DIFFERENT CONTEXTS.

16           SO AS I UNDERSTOOD THEIR INDEFINITENESS ARGUMENT,

17  THERE'S SOMETHING WRONG WITH THE PATENT BASED ON OUR

18  CONSTRUCTION, BECAUSE IT WOULD REQUIRE THE SOCKETS TO BE

19  SIMULTANEOUSLY FIXED AND NOT FIXED TO THE POWER SUPPLY HOUSING.

20           NOW WE HAVE A COMMON CONSTRUCTION WHICH JUST SAYS

21  "HOUSING," AND IT'S FINE.  IT DOESN'T EXCLUDE THE SOCKETS BEING

22  FIXED TO THE POWER SUPPLY HOUSING, AND IT DOESN'T REQUIRE THEM.

23  THE CLAIMS ALREADY RECITE -- CLAIMS 1 AND 4, YOUR HONOR, ALREADY

24  RECITE THAT THE SOCKETS AT ONE END ARE FIXED TO THE POWER SUPPLY

25  HOUSING.  SO WHEN THE INVENTORS WANTED TO SAY THAT, THEY SAID

1   IT.

2            **THE COURT:**  THEY SPECIFIED.

3            **MR. NICODEMA:**  YES.

4            AND ONE THING ABOUT INDEFINITENESS, YOUR HONOR -- AND

5   I KNOW WE BRIEFED THIS -- THE COURT CAN ONLY FIND THE CLAIM

6   INDEFINITE IF THEY'RE WHAT THE FEDERAL CIRCUIT HAS LOVINGLY SAID

7   THE CLAIMS ARE INSOLUBLY AMBIGUOUS, INCAPABLE OF CONSTRUCTION.

8   WE JUST CONSTRUED IT.

9            NOW WE ARE UP TO "PLUG," AND WE CAN TAKE THESE --

10           **THE COURT:**  CAN I HEAR ON THE INDEFINITENESS

11  ARGUMENT?

12           **MR. NICODEMA:**  OH, I'M SORRY.

13           **MR. MOUNT:**  THANK YOU.

14           THE INDEFINITE ISSUE IS A LITTLE BIT DIFFICULT TO

15  TALK TO BECAUSE THE CLAIMS THEMSELVES ARE CONFUSING.  IT TAKES A

16  WHILE TO FULLY APPRECIATE CLAIM 4 AND WHY IT IS INDEFINITE, NOT

17  INDEFINITE IN TERMS OF -- WELL, IT'S JUST NOT A SENSIBLE CLAIM.

18           NOW, WHEN WE LOOK AT CLAIM 4, WE'VE GOT A PLURALITY

19  OF COMPONENT CABLES WHEREIN EACH OF THE COMPONENT CABLES HAS TWO

20  ENDS.  OKAY?  WHEREIN, A FIRST END OF EACH COMPONENT CABLE HAS A

21  PLUG THAT IS DIRECTLY MATED WITH ONE OF THE, AT LEAST, TWO

22  OUTPUT SOCKETS.  DOES THAT MAKES SENSE?  OR -- OR THE AT LEAST

23  ONE DC OUTPUT CABLE PLUG.

24           HOW DOES THIS MAKE SENSE?

25           WHEN YOU LOOK AT PLUG, AND I MAY BE GETTING AHEAD OF

1  MYSELF, BUT PLUGS ARE DESIGNED TO COOPERATE WITH SOCKETS.  SO

2  YOU CANNOT HAVE A CABLE PLUG THAT IS DIRECTLY MATED TO A CABLE

3  PLUG.  YOU CANNOT DO THAT.  "PLUG" IS CLEARLY DEFINED AS

4  COOPERATING WITH A SOCKET, SOCKET WITH A PLUG.

5       **THE COURT:**  DOESN'T THE "OR" SAY THAT, BECAUSE THERE

6  IS THE ALTERNATIVE IS ONE THAT YOU WOULD SAY IS NOT --

7       **MR. MOUNT:**  OR, POTENTIALLY, YOU GO TO A CABLE

8  SOCKET.  BUT WHAT IF WE AGREE THE SOCKET IS, A CABLE SOCKET IS A

9  RELATIVELY FIXED STRUCTURE; THAT IS, IT'S FIXED.  THIS CANNOT BE

10 A CABLE SOCKET.  THIS CAN'T BE A CABLE SOCKET.  IT'S NOT FIXED.

11      JUST TWO MINUTES AGO WE DESCRIBED IT DOESN'T HAVE TO

12 BE FIXED TO A HOUSING.  IT HAS TO BE FIXED TO SOMETHING.  THIS

13 IS NOT A SOCKET.  SO THE TWO -- ONE END FITS HERE -- I'M SORRY.

14      YOU ARE EITHER GOING TO MATE WITH A PLUG, WHICH YOU

15 CAN'T DO, OR A CABLE SOCKET, WHICH IS DEFINED AS EXCLUDED FROM

16 THESE STRUCTURES.  THAT IS THE FUNDAMENTAL PROBLEM WITH CLAIM 4.

17 IT'S SIMPLE TO UNDERSTAND ONCE YOU APPRECIATE IT.

18      NOW, THE SECOND END IS MATED WITH A COMPONENT.  SO

19 GOING TO THE EXTRA LANGUAGE, THAT'S CLEAR WHAT THAT MEANS.  THE

20 SECOND END OF THE CABLE IS DIRECTLY MATED WITH THE COMPONENT.

21 THAT MAKES SENSE.

22      IT IS JUST THE FIRST END HAS A PLUG, THE FIRST END OF

23 THE COMPONENT CABLE HAS A PLUG THAT'S EITHER DIRECTLY THEN MATED

24 WITH ONE OF THE TWO DC OUTPUT SOCKETS OR -- I'M SORRY -- OR AT

25 LEAST ONE DC CABLE PLUG, WHICH IT CANNOT BE, OR CABLE SOCKET,

1  WHICH IS NOT -- NOT DESCRIBED, NOT A FIXED STRUCTURE AS WE JUST

2  DEFINED IT.

3         **MR. NICODEMA:**  BRIEFLY, YOUR HONOR, MAY I USE THAT

4  SLIDE?

5         **THE COURT:**  YOU MAY.

6         **MR. NICODEMA:**  THE ISSUE HERE FROM THEIR PERSPECTIVE

7  IS DOES THIS HAVE TO BE FIXED TO THE POWER SUPPLY HOUSING.

8         **THE COURT:**  RIGHT.

9         **MR. NICODEMA:**  IT DOESN'T.  IT CAN BE FIXED TO THE

10 COMPUTER HOUSING, BECAUSE OUR DEFINITION OF "SOCKET" SAID

11 HOUSING, AND THAT'S POWER BAR.  LET'S BRING THE VEIL UP.

12 THEY'RE TALKING ABOUT POWER BAR HERE.  AND IN POWER BAR, YOU

13 HAVE THE STRIP OF SOCKETS, THE STRIP OF CONNECTORS THAT ARE ON

14 THE COMPUTER CASE.

15         THIS CABLE, THIS END HERE CAN BE CONNECTED TO THAT

16 STRIP OF CONNECTORS, WHICH IS ON THE COMPUTER CASE.  SO IT MEETS

17 THE DEFINITION OF "ATTACHED TO A RELATIVELY FIXED STRUCTURE SUCH

18 AS A HOUSING."  IT'S THE HOUSING OF THE COMPUTER CASE.

19         IT DOESN'T HAVE TO BE THE POWER SUPPLY HOUSING.

20 THAT'S WHERE THEY GET THIS CONFUSION IN THEIR BRIEF ABOUT, WELL,

21 THE WAY WE CONSTRUE THE CLAIM, IT HAS TO BE SIMULTANEOUSLY FIXED

22 AND NOT FIXED TO THE POWER SUPPLY HOUSING.

23         THAT WAS THE ONLY INDEFINITENESS ARGUMENT THEY MADE,

24 THAT IT HAS TO BE SIMULTANEOUSLY FIXED AND NOT FIXED TO THE

25 POWER SUPPLY HOUSING.  THAT'S WHAT I RESPOND TO.

```
 1            IT DOESN'T HAVE TO BE THE POWER SUPPLY HOUSING, YOUR

 2   HONOR.  IT SAYS "A HOUSING," AND THEY JUST AGREED TO IT.  IT CAN

 3   BE THE HOUSING OF THE COMPUTER CABLES.  SO THERE IS NO

 4   INDEFINITENESS HERE.

 5            MR. MOUNT:  YOUR HONOR?  I INVITE THE COURT TO LOOK

 6   FOR A POWER STRIP, LOOK FOR SOMETHING IN THE FILE HISTORY, LOOK

 7   FOR SOMETHING IN THE PATENT THAT TALKS ABOUT HOW THIS IS FIXED

 8   IN THE WAY "FIXED" IS UNDENIABLY UNDERSTOOD.

 9            THERE'S NOTHING HERE THAT'S ABOUT THAT POWER BAR,

10   NOTHING ABOUT THAT OTHER DEVICE THAT'S LIKE YOUR OWN POWER

11   STRIP.

12            WHAT THEY'RE SAYING IS EITHER YOU ARE GOING TO MATE A

13   PLUG TO A PLUG, WHICH MAKES NO SENSE, OR THIS CABLE SOCKET IS

14   FIXED.  THAT'S NOT WHAT THEY SHOW.  THIS IS NOT A FIXED

15   STRUCTURE.  AND THE POWER BAR IS PRODUCT THAT'S NOWHERE

16   DESCRIBED IN THAT.  WE ARE NOT TALKING PLUG TO PLUG.

17            MR. NICODEMA:  I THINK WE ARE ON THE LAST ELEMENT,

18   YOUR HONOR.  IT'S THE COLLECTION OF THREE ELEMENTS THAT RECITE

19   "PLUG" IN SOME WAY SHAPE OR FORM.

20            THE COURT:  RIGHT.

21            MR. NICODEMA:  RIGHT.

22            PLUG, DC OUTPUT PLUG, DC OUTPUT CABLE PLUG.  ALL

23   RIGHT?

24            AND HERE IS WHERE THE PARENTHETICAL BECOMES

25   MEANINGFUL, YOUR HONOR.  OUR CONSTRUCTION SAYS IT'S ATTACHED TO
```

1   A RELATIVELY MOVEABLE STRUCTURE SUCH AS A CABLE, SUCH AS A

2   CABLE, BUT NOT NECESSARILY A CABLE, AND THEY SAY SUCH AS A

3   CABLE.

4            I'M WILLING TO REMOVE THAT PARENTHETICAL, BECAUSE I

5   THINK THE WORDS ON THEIR FACE, JUST LIKE THE WORDS "SUCH AS A

6   HOUSING" ARE NOT LIMITED.  IT DOESN'T REQUIRE IT TO BE -- I

7   MEAN, WE DON'T EVEN NEED "CABLE" THERE.  MAYBE WE SHOULD HAVE "A

8   RELATIVELY MOVEABLE STRUCTURE" BECAUSE "SUCH AS A CABLE" ISN'T

9   HELPFUL BECAUSE IT'S NOT LIMITED TO A CABLE.

10           **THE COURT:**  "SUCH AS" COULD GIVE SOME, YOU KNOW, SOME

11  CONCEPT, IF THEY'RE FISHING FOR WHAT IS A MOVEABLE STRUCTURE --

12  WELL, AN IDEA OF ONE KIND OF MOVEABLE STRUCTURE IS A CABLE.  I'M

13  NOT SURE -- IT ISN'T HELPFUL IN TERMS OF FOCUSING THE MIND A BIT

14  ON WHAT YOU'RE TALKING ABOUT WHEN YOU SAY "MOVEABLE STRUCTURE,"

15  BECAUSE THAT'S A BIT OF AN ODD TERM.

16           **MR. NICODEMA:**  TO PREVENT THE FISHING EXPEDITION,

17  YOUR HONOR, I WOULD LIKE -- I THINK IT'S IMPORTANT TO HAVE THIS

18  NEGATIVE LIMITATION, "BUT NOT NECESSARILY A CABLE," BECAUSE

19  NOWHERE DOES THE PATENT SAY THAT IT HAS TO BE ATTACHED TO A

20  CABLE, AND HERE'S WHY --

21           **THE COURT:**  WELL, SO YOUR FIRST SUGGESTION, TO GO

22  BACK TO IT, IS, IF YOU CAN GO BACK TO YOUR PROPOSED

23  CONSTRUCTION --

24           **MR. NICODEMA:**  YES, SIR.

25           **THE COURT:**  WOULD BE TO END AT "MOVEABLE STRUCTURE"?

1          **MR. NICODEMA:**  YES, SIR.

2          **THE COURT:**  LET ME JUST FIRST FIND OUT FROM THE

3  DEFENSE SIDE THEIR REACTION TO THAT.

4          **MR. MOUNT:**  WELL, YOUR HONOR, WHERE WE AGREE, THIS IS

5  STRICTLY OUT OF THE SPECIFICATION "ATTACHED TO A RELATIVELY

6  MOVEABLE STRUCTURE SUCH AS ELECTRICAL CABLES," RIGHT IN THE

7  SPEC.

8          **THE COURT:**  IN THE SPECIFICATION, IT SAYS "SUCH AS AN

9  ELECTRICAL CABLE"?

10          **MR. NICODEMA:**  NO.

11          **MR. MOUNT:**  (READING)

12               "FURTHER, SUCH A PLUG IS INTENDED TO REFER

13               TO A DEVICE ATTACHED TO A RELATIVELY MOVEABLE

14               STRUCTURE SUCH AS AN ELECTRICAL CABLE."

15          WE BOTH SAID "SUCH AS A CABLE."  YOU COULD SAY

16  "ELECTRICAL CABLE," BUT I DON'T SEE WE ARE ADDING CLARITY BY

17  LIMITING WHAT THE SPECS ARE.

18          **THE COURT:**  BEFORE YOU ALL ENGAGE ON THAT ISSUE, I

19  TAKE IT YOU'RE SAYING THAT YOU WANT THE -- YOU DON'T WANT TO

20  STOP AT "MOVEABLE STRUCTURE"; YOU WANT "SUCH AS A CABLE" BASED

21  ON THE FACT IT'S IN THE SPECIFICATION?

22          **MR. MOUNT:**  EXACTLY.

23          **THE COURT:**  OKAY.

24          NOW, ON THE PARENTHETICAL THAT SAYS "NOT NECESSARILY

25  A CABLE," WHAT'S YOUR VIEW OF THE SUGGESTION, AT ONE POINT,

1  ANYWAY, BY MR. NICODEMA WAS TO REMOVE THAT?  THAT WAS IN HIS

2  PROPOSED CONSTRUCTION.

3          **MR. MOUNT:**  SURE.  I THINK IT MAKES SENSE.  IF YOU

4  REMOVE THAT EXTRA PARENTHETICAL PHRASE, WE'RE BACK TO THE

5  SPECIFICATION AND BACK TO WHAT WE WANTED.

6          **THE COURT:**  WELL, THAT'S BACK TO YOUR CONSTRUCTION.

7  OKAY.  WHERE ARE WE ON THAT?

8          **MR. NICODEMA:**  WHERE WE ARE, YOUR HONOR, IS, FIRST OF

9  ALL, THE DEFINITION OF "PLUG" DOES NOT SAY "SUCH AS AN

10  ELECTRICAL CABLE," BECAUSE I HAVE IT RIGHT HERE.  IT SAYS "SUCH

11  AS A CABLE."

12          AND MY CONCERN NOW, YOUR HONOR, IS YOU KIND OF -- YOU

13  SAID THAT THIS MAY LEAD TO A FISHING EXPEDITION AS TO WHAT THE

14  RELATIVELY MOVEABLE STRUCTURE CAN BE, AND AS LONG AS IT'S CLEAR

15  THAT IT'S NOT REQUIRED THAT THE PLUG BE CONNECTED TO A CABLE,

16  I'M FINE.  THAT'S WHY I HAD THE NEGATIVE LIMITATION TO BEGIN

17  WITH.

18          I DON'T WANT THE CLAIM -- THERE'S NOTHING IN THE

19  INTRINSIC RECORD THAT WOULD REQUIRE A PLUG TO BE ATTACHED TO A

20  CABLE, PER SE, AND THAT'S WHY, FOR ALL THE PLUG ELEMENTS, WE PUT

21  IN THIS NEGATIVE LIMITATION AND THE PARENTHETICAL AT THE END.

22          **THE COURT:**  WELL, MY NOTION, THE PLAIN MEANING OF

23  "SUCH AS" IS THAT IT -- BY THE USE OF THAT TERM, IT MEANS IT'S

24  NOT REQUIRED.  I DON'T THINK "SUCH AS" -- I DON'T THINK ANYONE

25  WOULD THINK "SUCH AS" MEANS IT MUST BE.

1          **MR. NICODEMA:**  THEN I'M FINE WITH THAT.  I'M FINE IF

2   WE GO BACK TO THE WAY WE HAD IT.  I THINK WE'RE -- I'M READING

3   QUICKLY.  IT LOOKS LIKE OUR CONSTRUCTIONS ARE IDENTICAL EXCEPT

4   FOR THE PARENTHETICAL.

5          **MR. MOUNT:**  I THINK THAT'S CORRECT.

6          **MR. NICODEMA:**  I THINK WE ARE FINE WITH THAT.  AND

7   WITH YOUR HONOR'S STATEMENT THAT "SUCH AS A CABLE" DOES NOT

8   REQUIRE IT TO BE ATTACHED TO A CABLE, WE'RE FINE WITH THAT.

9          **THE COURT:**  IN FACT, NOT TO PILE ON YOUR -- I THINK

10  THE CONCERN THAT YOU'RE EXPRESSING IS -- I THINK YOUR

11  PARENTHETICAL ALMOST IMPLIES -- CREATES MORE PROBLEMS THAN YOU

12  WOULD WANT TO CREATE, BECAUSE I DON'T THINK IF YOU HEAR "SUCH AS

13  A CABLE," IT WOULD EVEN OCCUR TO YOU THAT IT'S NECESSARILY A

14  CABLE.  BUT THEN WITH THAT PARENTHETICAL, I THINK IT MAKES IT

15  CONFUSING.  OKAY.  OUT GOES THE PARENTHETICAL.

16         **MR. NICODEMA:**  FOR THE THREE CABLE ELEMENTS, CABLE

17  DC -- I MEAN FOR THE THREE PLUG ELEMENTS:  CABLE, A PLUG, DC

18  OUTPUT PLUG, AND DC OUTPUT CABLE PLUG.

19         **THE COURT:**  OKAY.

20         **MR. NICODEMA:**  WE JUST TAKE THE PARENTHETICAL OUT.

21         **THE COURT:**  WE WILL.  OKAY.

22         **MR. NICODEMA:**  AND THAT IS IT.  WE COVERED ALL SIX.

23         **THE COURT:**  FABULOUS.

24         OKAY.  WHAT I HAVE TO -- JUST TO GO OVER WHAT IS IN

25  DISPUTE AND WHAT I NEED TO FOCUS ON AND GO BACK AND REVIEW WHAT

1  YOU SUBMITTED TO ME, THE LIVE ISSUES IF YOU WILL, ON

2  CONSTRUCTION, MY -- IF MY NOTES ARE CORRECT, WITH RESPECT TO

3  PERSONAL COMPUTER POWER SUPPLY, THERE REMAINS THE ISSUE OF

4  EXCLUDING "REDUNDANT POWER SUPPLY" ISSUE.  THAT I NEED TO

5  DECIDE.

6          **MR. NICODEMA:**  YES, SIR.

7          **THE COURT:**  YES.  OKAY.

8          THEN WITH RESPECT TO THE INDEFINITENESS ARGUMENT FOR

9  CLAIM 4, THAT'S THERE, AND I NEED TO DECIDE IT, GO BACK AND LOOK

10 AT THE PAPERS.  ANYTHING ELSE?

11         **MR. NICODEMA:**  PLURALITY OF COMPONENT CABLES, YOUR

12 HONOR.

13         **THE COURT:**  YES, YES.  YES, I HAVE THAT ONE, ALSO.

14         OKAY.  ANY OTHER -- ANYTHING ELSE I NEED TO DECIDE?

15         **MR. NICODEMA:**  I DON'T THINK SO, YOUR HONOR.  I THINK

16 WE COVERED IT, AND YOU HAVE BEEN VERY PATIENT WITH US.

17         **MR. MOUNT:**  I THINK THAT'S IT.

18         MY ONLY POINT IS I THINK OUR BRIEFING WAS NOT AS

19 CLEAR AS IT SHOULD BE ON THE INDEFINITENESS.  I THINK IT WOULD

20 BE HELPFUL FOR US TO ORDER A TRANSCRIPT.  I THINK MY REMARKS

21 TODAY WERE PROBABLY MORE HELPFUL THAN THE BRIEF WAS ABOUT THE

22 INDEFINITENESS.

23         **THE COURT:**  IS THAT A REQUEST TO PROVIDE A

24 SUPPLEMENT, OR IS THAT A SORT OF SUGGESTION THAT I FOCUS ON THE

25 TRANSCRIPT AND NOT ON THE BRIEFING?

1          **MR. MOUNT:**  I THOUGHT -- I THINK THE TRANSCRIPT IS

2   PROBABLY MORE HELPFUL, BECAUSE I THINK OUR THINKING ABOUT IT GOT

3   MORE CLEAR AS WE PREPARED FOR OUR PRESENTATION.

4          **MR. NICODEMA:**  I THINK YOU NEED TO FOCUS ON THEM

5   BOTH, YOUR HONOR, BECAUSE WHAT I FOUND IS THAT THERE WAS A SEA

6   CHANGE IN THEIR INDEFINITENESS ARGUMENT FROM THE BRIEF, AND

7   TODAY THE ONLY INDEFINITENESS ARGUMENT I SAW WAS THIS NOTION OF

8   SIMULTANEOUS CONNECTION TO THE POWER SUPPLY HOUSING AND NOT

9   CONNECTION TO THE POWER SUPPLY HOUSING.

10         **THE COURT:**  WHAT WE'RE ALL USED TO IS WHEN A PARTY

11  SUGGESTS TO ME THAT THERE'S BEEN A SEA CHANGE, IT'S USUALLY THE

12  PREAMBLE TO A REQUEST TO:  I NOW WANT TO RESPOND TO THE NEW

13  ARGUMENT.

14         LET'S ASSUME FOR A MOMENT THAT A SORT OF NEW SLANT

15  HAS BEEN TAKEN BY ONE SIDE OR THE OTHER.  THEY'RE NOT PRECLUDED

16  FROM DOING THAT.  BUT I UNDERSTAND WHEN I THEN HEAR THE

17  ARGUMENT:  WELL, WE DIDN'T ANSWER THAT ISSUE, SO WE WANT LEAVE

18  TO ANSWER THE ISSUE -- IS THAT SOMETHING YOU WANT TO DO?

19         **MR. NICODEMA:**  MY INCLINATION WOULD BE, YOUR HONOR,

20  THE PARTIES HAD AMPLE TIME TO BRIEF THIS.  WHATEVER ARGUMENTS

21  ARE MADE IN THE BRIEFS ARE THE ARGUMENTS.

22         **THE COURT:**  I WILL TELL YOU SO YOU ARE FOREWARNED, I

23  THINK THIS IS A DYNAMIC ENOUGH PROCESS THAT I'M NOT GOING TO

24  TAKE SOME SORT OF ESTOPPEL POSITION AND SAY -- IF I CONCLUDE, AS

25  YOU SUGGESTED, THAT I THINK THERE'S BEEN A SHIFT IN THE

1  ARGUMENT, I'M NOT GOING TO DISREGARD THE ARGUMENT SIMPLY BECAUSE

2  IT WASN'T CONTAINED IN THE BRIEF.  SO, IF YOU THINK YOU NEED TO

3  FURTHER RESPOND TO WHAT YOU PERCEIVE AS A SHIFT, I'LL GIVE YOU

4  AN OPPORTUNITY TO DO THAT.

5            **MR. NICODEMA:**  ALL RIGHT.

6            **THE COURT:**  BECAUSE I WANT YOU TO KNOW I'M NOT GOING

7  TO PRECLUDE IT.

8            I TAKE IT, MR. MOUNT, YOU ARE NOT NECESSARILY BUYING

9  INTO THE IDEA THAT YOUR ARGUMENT IS A NEW ONE, BUT, RATHER,

10 IT'S SLIGHTLY DIFFERENTLY PRESENTED?

11           **MR. MOUNT:**  I THINK IT'S MORE CLEARLY PRESENTED.  WE

12 WERE TALKING ABOUT THE SECOND END THAT IS NOT A FIXED, WHETHER

13 IT IS IT WAS FIXED TO THE HOUSING OR NOT NECESSARILY THE

14 HOUSING.  BUT THAT IS NOT A FIXED UNIT.  IT'S EITHER A PLUG,

15 PLUG TO PLUG, WHICH DOESN'T WORK, OR A SOCKET WHICH IS FIXED,

16 AND THAT'S NOT FIXED.

17           SO, I DON'T KNOW THAT IT'S MUCH OF A DEPARTURE, BUT I

18 STARTED TO SEE IT MORE CLEARLY MYSELF AS WE WERE PREPARING FOR

19 ORAL ARGUMENT.  I THINK IT'S IN THE BRIEFS, BUT I THINK IT'S

20 MORE CLEARLY UNDERSTOOD --

21           **THE COURT:**  WOULD YOU LIKE TO RESPOND IN WRITING?

22           **MR. NICODEMA:**  YES, SIR.

23           I JUST WANT TO BE CLEAR.  I GUESS THE DEFENDANTS ARE

24 NOT ASKING FOR ANOTHER BRIEF.

25           **THE COURT:**  THEY'RE NOT.

1          **MR. NICODEMA:**  THEY WANT TO RELY ON WHATEVER THEY

2    SAID TODAY.  SO, ONCE I GET THE TRANSCRIPT, I'D LIKE AN

3    OPPORTUNITY TO SUBMIT A SUPPLEMENTAL BRIEF.

4          **THE COURT:**  ALL RIGHT.  I WILL ALLOW YOU TO FILE A NO

5    MORE THAN -- BECAUSE THIS IS ON A SPECIFIC ISSUE, CAN YOU

6    CONFINE IT TO NO MORE THAN TEN PAGES?

7          **MR. NICODEMA:**  YES, SIR.

8          **THE COURT:**  ALL RIGHT.

9          AND NOW I KNOW MR. MOUNT IS GOING TO SAY:  WELL, NOW,

10   NOW I WANT AN OPPORTUNITY TO BE HEARD ON THIS.

11         **MR. NICODEMA:**  OPENED UP A CAN OF WORMS.

12         **THE COURT:**  I KNOW IT DOES, BUT I WANT A COMPLETE

13   RECORD.  I WANT EVERYONE TO HAVE AN OPPORTUNITY TO TELL ME WHAT

14   THEY THINK THEY NEED TO TELL ME.  BUT, IN FAIRNESS, ALSO, TO THE

15   PLAINTIFFS, I DON'T WANT NOW TO ALLOW A REPLY BRIEF.

16         I'M GOING TO GIVE BOTH SIDES AN OPPORTUNITY ON THE

17   INDEFINITENESS ISSUE TO GIVE ME A FURTHER BRIEF, AND I WANT IT A

18   WEEK FROM THE DATE THAT YOU GET THE TRANSCRIPT.  YOU DON'T HAVE

19   TO FILE A BRIEF, AND I WILL NOT THINK LESS OF YOU IF YOU

20   CONCLUDE YOU DON'T WANT TO FILE ONE, BUT IF YOU DO FILE ONE, NO

21   MORE THAN TEN PAGES SPECIFICALLY ON THE INDEFINITENESS ISSUE,

22   AND IT'S SIMULTANEOUS.

23         **MR. MOUNT:**  THANK YOU.

24         **MR. NICODEMA:**  THAT'S FAIR, YOUR HONOR.  THANK YOU.

25         **THE COURT:**  OKAY.  GOOD.  THANK YOU VERY MUCH.  IT

1    WAS -- IT WENT VERY SMOOTHLY, AND I APPRECIATE IT, AND I

2    APPRECIATE YOUR WORKING TOGETHER, WHICH IS VERY NICE IN THIS DAY

3    AND AGE WHEN SO FEW WORK TOGETHER.  SO, THANK YOU.

4            I'LL GO BACK AND DO MY HOMEWORK, AND, HOPEFULLY, NOT

5    LONG AFTER YOU GIVE ME THAT SUPPLEMENTAL SUBMISSION, I CAN IN

6    THE MEANTIME BE WORKING ON SOME OF THESE OTHER ISSUES AND GET

7    SOMETHING TO YOU.

8            **MR. MOUNT:**  THANK YOU.

9            **MR. NICODEMA:**  THANK YOU, YOUR HONOR.

10           **THE COURT:**  THANK YOU.

11                   (PROCEEDINGS ADJOURNED.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

### CERTIFICATE OF REPORTER

I, JOAN MARIE COLUMBINI, OFFICIAL REPORTER FOR THE UNITED STATES COURT, NORTHERN DISTRICT OF CALIFORNIA, HEREBY CERTIFY THAT THE FOREGOING PROCEEDINGS IN C 09-4255 RS, ULTRA PRODUCTS V. ANTEC, INC., WERE REPORTED BY ME, A CERTIFIED SHORTHAND REPORTER, AND WERE THEREAFTER TRANSCRIBED UNDER MY DIRECTION INTO TYPEWRITING; THAT THE FOREGOING IS A FULL, COMPLETE AND TRUE RECORD OF SAID PROCEEDINGS AS BOUND BY ME AT THE TIME OF FILING.

THE VALIDITY OF THE REPORTER'S CERTIFICATION OF SAID TRANSCRIPT MAY BE VOID UPON DISASSEMBLY AND/OR REMOVAL FROM THE COURT FILE.

S/B JOAN MARIE COLUMBINI

_____

JOAN MARIE COLUMBINI, CSR 5435, RPR

TUESDAY, AUGUST 24, 2010